### BANTUELLE v. SOUTHWESTERN GAS & ELECTRIC CO.

#### No. 11048.

Court of Civil Appeals of Texas. Galveston.

Oct. 10, 1940.

Lincoln & Harris, of Texarkana, for appellant.

Arnold & Arnold and Wheeler, Atchley & Vance, all of Texarkana, for appellee.

GRAVES, Justice.

This appeal is from a judgment of the District Court of Bowie County, sustaining appellee's motion to set aside the jury's findings—theretofore returned in answer to special issues 1 to 4, inclusive, that had been submitted to it—and rendering judgment, notwithstanding such findings, in favor of the appellee and adversely to the appellant in his suit against it for both actual and exemplary damages for the alleged wrongful cutting off and discontinuance by it of the electric service appellee had been theretofore furnishing to appellant's business in the city of Texarkana, under written contracts therefor, then pending between the parties.

All the special issues submitted, together with the jury's responses, were these:

"Special Issue No. 1. Do you believe from a preponderance of the evidence that the plaintiff, Fred Bantuelle, made a contention with the defendant, Southwestern Gas & Electric Company, that there had been an overcharge by the defendant on his said electric light bill?

"We, the jury, answer: Yes.

"If you have answered Special Issue No. 1 (yes) and in that event only, then answer the following special issue:

"Special Issue No. 2. Do you find from a preponderance of the evidence that such contention by the plaintiff, if there was one, was made by the said plaintiff, Fred Bantuelle, in an honest belief that there had been an overcharge for the service rendered?

"We, the jury, answer: Yes.

"If you have answered Special Issue No. 2 'yes' and in that event only, then answer the following special issue:

"Special Issue No. 3. Do you find from a preponderance of the evidence that the plaintiff had reasonable grounds for making such contention, if any?

"We, the jury, answer: Yes.

"Special Issue No. 4. What sum of money, if paid now in cash, do you find from a preponderance of the evidence will reasonably and fairly compensate the plaintiff for loss of profit, if any, from his business on account of the electric service being discontinued?

"We, the jury, answer: $200.00.

"Special Issue No. 5. Do you find from the evidence that plaintiff had discontinued his business at 1526 Texas avenue when defendant cut him off from its lines?

"We, the jury, answer: No.

"Special Issue No. 6. Do you find from the evidence that the defendant made reasonable efforts to give the plaintiff the rates and class of service most advantageous to him?

"We, the jury, answer: Yes.

"Special issue No. 7. Do you find from the evidence that before defendant cut plaintiff off from its lines it gave plaintiff notice of its intention to so cut plaintiff off unless he paid said bill?

"We, the jury, answer: Yes."

Obviously, the complained-of setting aside of the first four of these emasculated the judgment in appellant's favor, wherefore, upon the appeal, he complains of that action, insisting that instead the court should have left those first four answers standing, disregarded the answers to succeeding issues 5, 6 and 7, and rendered judgment in appellant's favor upon the verdict under the first four; whereas, in turn, the appellee contends the court was left no alternative—under the undisputed evidence—than to cast out the first four answers and then render the judgment it did, since the remaining three issues and the findings thereunder were in its favor.

As this court interprets it, the appellant's position—when reduced to its ultimate—is, in substance, this, as the first four special issues upon which he relies import: Since he had made a contention to the appellee that there had been an overcharge by it on his electric light bill for the service rendered in an earnest belief that such was the case, and since he had had at the time reasonable grounds for making such contention, he was, upon that situation alone, entitled to a recovery for the $200 the jury had found was reasonable and fair compensation to him for the loss of profit from his business he had sustained on account of the electric

service being so discontinued; as his main, if not sole, reliance for authority upon that proposition, he cites—in so far as adjudicated cases are concerned—Southwestern Gas & Electric Co. v. Stanley, 123 Tex. 157, 70 S.W.2d, 413, by our Supreme Court.

This court, after a careful review of the statement of facts, is constrained to disagree with the appellant and to conclude, rather, that the learned trial court was correct in the action taken, under the conclusive, if not undisputed, state of the evidence as a whole; it would be a work of supererogation to undertake here either a complete restatement or full résumé of it, hence its controlling substance and resulting effect, as this court conceives it, will be stated.

That may best be done, it is thought, by this statement from the brief for the appellee herein, which has been carefully checked for accuracy and edited to its satisfaction by this court, to-wit:

"The plaintiff did nothing in the way of co-operating with the defendant to secure the only other available class of service and rate applicable to his place of business; defendant was helpless in that regard without his cooperation; there were only two classes of service and rates applicable to his business establishment, he contracted for one such rate by a written contract with the defendant, and the only other available rate and class was offered to him under the terms of his written contract and he refused to accept such only other rate; he could have procured the 'large lighting and power' rate and discontinued the 'commercial lighting' rate (the sole 2 rates referred to) that he had, by simply complying with the plain terms of his written contract with the defendant, that is, by making a separate written application for the 'large lighting and power' rate; on four or five occasions during the time that he had a connection the defendant tendered to him the large lighting and power rate, which plaintiff wanted, but that he did not sign the contract. Even if he had been permitted to carry the contract for the large lighting and power rate to an attorney and the latter had suggested a change in the terms of the contract, defendant could not have executed the contract without being guilty of discriminating against other users of the same class of service; it being a public utility, it necessarily was required to treat

all customers alike; * * * if the defendant had made such a change, it would necessarily have had to violate the terms of its contract with the plaintiff by making a change in the rate and class of service, contrary to the terms of such contract; * * * and too, from the undisputed testimony, the plaintiff's business was a seasonal one and during the summer months when he was running full force, the rates under the large lighting and power would have been cheaper for such months than the commercial lighting rate, which he contracted for, but in the winter months, when plaintiff's establishment was in a more or less dormant state, (out of season), his rate under the large lighting and power would have been greater than the commercial lighting classification which he contracted for, and under which he was furnished electric current; the only way one could determine which of the two only available rates applicable to his place of business was the most advantageous to the plaintiff would be to run for a full period of twelve months on each rate and then compare the cost of the electric current under each of such classifications and applicable rates. * * *

"The contract which plaintiff and defendant entered into plainly stipulates that if two or more classes of service and rates are applicable to plaintiff, that the choice of such rates lies with the customer, plaintiff herein, and that if the customer obtains any rate or class of service different from that contracted for in writing, he should make a written contract for the other rate and class of service. As indicated, there were only two rates and classes of service applicable to plaintiff's place of business, having regard to the electrical equipment and appliances installed and in operation there, namely 'commercial lighting' and 'large lighting and power'; he contracted for one, was dissatisfied with it, and the other was tendered to him, on the condition only that he execute a new contract for the other rate and class; * * * furthermore, defendant offered to date the new contract for the other rate back to the date of the old contract and give plaintiff credit for the difference in the two rates during such entire period that he had been operating on the rate which he chose by contract; each time this tender of the only other available rate and class the plaintiff refused to accept; he simply would not sign any other contract for another class and rate. * * *

"The defendant, operating in the home-ruled city of Texarkana, Texas, was under the supervision of the city government with reference to its rules, regulations, and rates, and its rate-schedules, classes of service, and customers' contracts, were necessarily required to be uniform in order to avoid any discrimination between customers of the same class; that is, customers using the same, or practically the same, amount of current with virtually the same type and maximum demand of equipment; the defendant conducted its business in Texarkana, Texas, in that manner; further, the regulations of the Federal Government require that each customer be served with electric current under a contract, and under separate contracts for separate classes of service under different meters, in order for the auditors, who check the utility's books, to determine the amount of gross-receipts tax; * * *

"The plaintiff, at no time, ever offered to pay the defendant for the electricity under the rates that he, plaintiff, contended should apply to his business, but denied at all times that he owed anything, carrying such denial as far as the Justice Court, when defendant sued him for the amount of his delinquent bill. * * *

"The judgment of the Justice Court establishes the fact that at the time defendant discontinued plaintiff's service that the latter owed the defendant more than the amount of his deposit."

In so concluding, it seems plain under the determinative facts thus shown here, that this cause is easily distinguishable from the Stanley case so relied upon by appellant, in that Stanley had two meters, one at his home, and one at his shop, "under separate contracts; he became delinquent on his bill at the shop, and the service company discontinued his service at both his residence and shop, when the bill at his residence was fully paid and was not in default."

That is a far cry from the factual basis here presented, which undisputedly shows that appellant flatly refused to comply with the terms of his written contract with the appellee, although it specifically provided the method of obtaining another rate, should the one in effect become unsatisfactory; and, in doing so, and contending that it was overcharging him under it, he just as flatly asserted his intention

not to pay his bill and that the appellee could not discontinue its service to his plant, without a judicial determination as to the correctness of his contention.

On the contrary, our courts, as applied to such circumstances, appear to have uniformly held that a utility concern, standing in the appellee's shoes, had a right to discontinue its service, without any such prior judicial determination, for such a failure to pay for the current already used, especially where, as here, the customer at that particular time owed the utility company more than the amount of his deposit with it under the contract between them. See Texas Power & Light Co. v. Taylor, Tex.Civ.App., 201 S.W.- 205; Withers v. Ft. Worth Gas Company, Tex. Civ.App., 238 S.W. 324.

It is deemed unnecessary further to dispose specifically of the presentments otherwise urged in the briefs, since these conclusions determine the merits of the appeal; from them it follows that the judgment of the learned trial court should be affirmed. It will be so ordered.

Affirmed.