Mrs. Bethel **LESLIE**, a feme sole, Doing Business As Leslie Baking Company, et al., Appellants,

v.

**HOUSTON NATURAL GAS CORPORA- TION**, Appellee.

No. 12808.

Court of Civil Appeals of Texas.

Galveston.

May 26, 1955.

Rehearing Denied June 16, 1955.

Fred W. Moore, Monteith, Baring & Monteith, Houston, Dan Moody, Austin, for appellants.

Fulbright, Crooker, Freeman, Bates & Jaworski, Leon Jaworski, Hugh Q. Buck and L. Keith Simmer, Houston, for appellee.

HAMBLEN, Chief Justice.

This suit was instituted in the District Court of Harris County by the appellants seeking a temporary and a permanent injunction to restrain appellee from taking any action to collect moneys due for gas furnished to appellants by appellee except such moneys as would be payable under appellee's schedule of rates designated as CI-202 and 202-L. Appellants also sought a declaratory judgment with reference to future obligations of appellants, as industrial consumers, which might be incurred for gas furnished to them by appellee in the future, and a mandatory injunction to compel appellee to furnish gas to appellants at the above designated rates until all consumers similarly situated should cease receiving gas at such rates. By supplemental pleadings, appellants also prayed for judgment against appellee for the difference between the amounts paid by them for gas furnished, and the amounts which would have been paid had such gas been charged for at the rates provided by Schedules CI-202 and 202-L.

Appellee answered by general denial, and filed a cross-action to recover for gas furnished by it to appellants, alleging that it was entitled to be paid therefor under the terms of rate schedules designated as CI-303 and 404.

With the issues thus joined, appellee filed a motion for summary judgment, which upon hearing was granted by the trial court to the extent of denying to ap-

pellants all relief sought by them, and granting to appellee judgment against appellants on its cross-action, but expressly providing that the amount of damages recoverable by appellee upon such cross-action was to be determined on further hearing. Appellants' appeal from such order was dismissed by this Court for lack of jurisdiction. Writ of error was refused by the Supreme Court.

Upon return of the litigation to the trial court, the appellee urged its motion for summary judgment with respect to the recovery sought in its cross-action. This motion was granted upon hearing, and a final judgment entered disposing of all issues raised by the pleadings. The effect of such judgment is to declare the rates provided for in schedules designated CI–303 and 404 to be the legal rate which appellee was entitled to charge appellants for gas furnished from and after the dates on which such rates were established, to deny to appellants all injunctive relief prayed for, and to grant judgment to appellee for gas furnished by it to appellants based upon the rates provided for by Schedules CI–303 and 404.

Before stating the complaints made by appellants by points of error here presented, the facts giving rise to this litigation, which are in large measure undisputed, should be stated.

Rates at which gas would be furnished to all consumers other than domestic or residential consumers were established by appellee in 1946 and set forth in schedules designated as CI–202 and 202–L. The details of the rates provided for by such schedules is not material except to say that all parties agree that prior to March 5, 1951, such rates represented the established rate for gas furnished to consumers such as appellants. On March 5, 1951, appellee withdrew Schedule CI–202 as representing the rates at which gas would thereafter be furnished to commercial and industrial consumers, and published and placed in effect a new schedule applicable to such consumers which it designated as CI–303, and which provided for rates higher than those set forth in the withdrawn Schedule CI–202. On March 5, 1951, when appellee declared the new Schedule CI–303 to be the established rate at which gas would be furnished to commercial and industrial consumers, there were outstanding unexpired contracts with certain of such consumers which provided for the furnishing of gas at the rate specified in Schedule CI–202. As to such contractual consumers, appellee continued to furnish gas at the CI–202 rate as contracted for, but as such contracts expired, tendered gas to such consumers, as well as to new customers, only at the CI–303 rates. It appears to be undisputed that at the time of the entry of the judgment appealed from, and so far as the record discloses, at the present time, there remain several industrial or commercial consumers, who by virtue of possessing unexpired contract with appellee, continue to receive gas at the rates provided for by Schedule CI–202.

In August, 1952, appellee published a new schedule as representing the established rate for gas furnished to industrial and commercial consumers. By such publication, appellee declared Schedule CI–303 to represent the rates at which gas would be furnished to any such consumer who would in writing contract for the purchase of gas for a minimum period of one year. As to such consumers who declined to enter into such contract, appellee declared a new schedule designated as CI–404 as representing the established rate for non-contract consumers. The rates published in Schedule CI–404 are higher than those published in Schedule CI–303. All litigants agree that all of the rates published in any of the schedules which have been mentioned are within the limits set by City of Houston Ordinance No. 7290 which declares the fair and reasonable rate to be charged for gas.

All of the appellants are industrial or commercial consumers of gas, who as customers of appellee, were, prior to the publication of Schedules CI–303 and 404, furnished gas at the rates established by Schedules CI–202 and 202–L, but who, at some time subsequent thereto have been

tendered gas only at the rates provided for in Schedules CI–303 and 404. Certain of appellants paid the higher rates under protest, and as plaintiffs, sought judgment against appellee for the excess above the rates scheduled as CI–202 and 202–L which they have paid. Others of appellants refused to pay any amount in excess of the rates scheduled as CI–202 and 202–L. As to them, appellee, by cross-action, sought, and was granted judgment for the difference between the amount which they had paid and the amount which would be due under the terms of Schedules CI–303 and 404. Except in so far as any judgment rendered may be executed, the interests, rights and contentions of all appellants are identical.

Appellants present seven points of error. The fundamental legal question involved however is incorporated in their points numbered one to four, inclusive, which they have grouped for the purpose of argument. Since it appears to this Court that the determination of the question there presented is determinative of this appeal, they will be considered before appellants' remaining points are stated.

By points one to four, inclusive, appellants contend that appellee, as a public utility, is obligated to furnish gas to appellants at the lowest established rates for industrial consumers in Harris County, which, they contend, under the facts stated, is represented by Schedules CI–202 and 202–L, and that the existence or non-existence of written contracts is immaterial; and that a difference in rate base upon the existence or non-existence of a written contract constitutes unlawful discrimination in violation of Article 1438, V.A.T.S. It is further their contention that the undisputed facts establish unlawful discrimination entitling all of appellants to the injunctive relief prayed for, and those of appellants who have paid in excess of the rates established by Schedules CI–202 and 202–L to judgment against appellee for such excess.

In their brief, both litigants have cited and analyzed numerous authorities from this and other jurisdictions. We feel safe in assuming that this Court has had the benefit of having its attention directed to every decided case which could be of assistance in the determination of the question presented. The labor which would otherwise be involved in reaching the proper determination of the conflicting contentions which are so ably presented appears to this Court, however, to have been heretofore in every material respect performed by the Supreme Court of Texas in its decision of the case of United Gas Corporation v. Shepherd Laundries Co., Inc., 144 Tex. 164, 189 S.W.2d 485. We feel that the legal principles which that decision so authoritatively established, when considered in the light of the undisputed facts presented by this present record, beyond any doubt, compels this Court to overrule appellants' points one to four, inclusive. To such an extent is this true, that we consider a statement of the facts there involved, together with the legal principles stated by the court, to be in order here.

That suit, United Gas Corporation v. Shepherd Laundries Co., supra, was instituted in Harris County by Shepherd Laundries Co. for damages because United Gas Co. charged it a higher rate for gas furnished than it did other customers under similar and like circumstances. The suit was for the difference between the rate paid by the plaintiff and the lower rate paid by other similar customers. Based upon jury findings that the favored customers were served under similar and like circumstances, and upon the undisputed facts that they received gas at lower rates, judgment was rendered for plaintiff in the sum of $5,094.10, which was affirmed by this Court. 181 S.W.2d 929. The Supreme Court of Texas reversed both courts. The opinion was written by Folley, Commissioner, and adopted by the Supreme Court. In it Judge Folley reviews at length the development of the law applicable to the fact situation there presented, citing numerous authorities. The following legal propositions, which we consider to be likewise applicable to the present case, are clearly established by that opinion. The authorities there cited

are here omitted both for brevity, and because we consider that opinion in itself to constitute ample authority for the guidance of this Court.

■ At common law a common carrier of goods is not under any obligation to treat all customers equally. He is bound to accept and carry for all, upon being paid a reasonable compensation. But the fact that he charges less for one than for another is only evidence to show that a particular charge is unreasonable, nothing more. There is nothing in the common law to hinder a carrier from carrying for favored individuals at an unreasonably low rate, or even gratis.

The courts in the United States developed an exception to the English common law rule. This exception required equality in rates between competitors in business. This exception is based upon the logical conclusion that if two customers are competitors, a favoring of one with a lower rate necessarily injures and damages the other.

Article 1438 is as follows: "It shall be unlawful for any such corporation to discriminate against any person, corporation, firm, association or place, in the charge for such gas, electric current or power, or in the service rendered under similar and like circumstances."

■ There is nothing in this article providing a penalty or fixing a measure of damages for discrimination. It merely declares discrimination to be unlawful and leaves the injured party to the same remedy for damages as existed under the common law. Thus, before one may recover for mere discrimination, he must allege and prove his loss as in tort.

■ A discrimination may arise from a mere inequality in rates, but an overcharge arises only when the rate charged is unreasonable in and of itself, irrespective of the rate exacted of others, or when it is in excess of the rate established for the particular customer or business.

The applicability of the foregoing principles to the present litigation are apparent when the following facts are considered. Appellants make no charge in any pleading that either the CI–303 or 404 rates are unreasonable or excessive. On the contrary, the undisputed evidence elicited by deposition of appellants' witnesses affirmatively establishes that no such charge is made. Neither is there any contention made or proof offered that appellants are in competition with any of the consumers to whom the CI–202 or 202–L rate is extended. On the other hand, such proof as does appear establishes that they are not competitors. The basis of appellants' complaint is disclosed by the following statement taken from their brief: "We did not attack the 303 or 404 rates as being unreasonable in and of themselves, although it is elementary that any rate which is discriminatory is unreasonable." We do not consider it to be the function of this Court to apply as elementary any proposition, the contrary of which has been categorically declared to be the law of this State by the Supreme Court.

Appellants, while recognizing the force and effect of the decision in United Gas Corporation v. Shepherd Laundries Co., supra, seek to distinguish and escape the force and effect of that holding upon the theory that the Supreme Court was not in that case confronted with a difference in rates based upon the existence or non-existence of a written contract for gas service. The factual basis for their contention is the admitted continuation of service by appellee at the CI–202 or 202–L rates to those consumers who hold unexpired contracts for service under such schedules. If we correctly understand appellants' argument, it is premised upon the proposition that such continuation of service constitutes the CI–202 and 202–L rates as the established rates, and as a consequence constitutes any higher rate, such as the CI–303 or 404 rates, an overcharge, per se. This state of facts, appellants contend, entitles them to the relief which they seek under the rationale of the decision of the case of

Texas Power & Light Co. v. Hilltop Baking Co., Tex.Civ.App., 78 S.W.2d 718.

Appellee on the other hand contends that under any possible view, the CI–303 rate became the established rate in March of 1951, and remained such until August, 1952, at which time the CI–303 and 404 rates together became the established rates. The factual basis for their contention rests upon the undisputed proof that every step taken in fixing of the earlier CI–202 rate was taken by appellee in fixing the CI–303 rate as its applicable rate schedule applicable to appellants' businesses; that after its publication, the new rate schedule was the only schedule currently offered by appellee as the basis for contracting with any of its industrial or commercial customers; that the new schedule was filed with all administrative bodies having jurisdiction over appellee and its customers; and that the custom and practice of appellee in applying the new schedule to its customers as soon as their contracts expired was uniform.

 We confess that the problem presented is difficult of solution. Neither litigant has cited, nor have we been able to find, any Texas authority dealing directly with the question of what facts determine and identify the "established rate". Most of the athorities to which we have been referred deal with the question of whether or not a utility may or may not charge one rate to customers who contract for service in writing, and another rate to customers who do not so contract. Appellee cites Bantuelle v. Southwestern Gas & Electric Co., Tex.Civ.App., 143 S.W.2d 994; Globe Ice Co. v. City of El Paso, 92 P.U.R.(New Series) 524; and Cock v. Marshall Gas Co., Tex.Civ.App., 226 S.W. 464, which convince us that in this jurisdiction, a utility may lawfully so differentiate. Appellants rely principally upon the case of United Fuel Gas Co. v. Public Service Commission, 73 W.Va. 571, 80 S.E. 931, decided by the Supreme Court of West Virginia, which appears to hold squarely that in that jurisdiction such differentiation is unlawful. Aside from the fact that that decision is from another state, and therefore only persuasive, we note that in that case the court was construing a statute of West Virginia, which, while not quoted in full in the opinion, appears from the context thereof to confer upon the Public Service Commission of that state the authority to abolish any rate charged by a utility which was discriminatory as defined by such statute. No such statute is involved here. The only applicable statute is Article 1438, V.A. T.S., which our Supreme Court has held merely declares discrimination unlawful, and leaves the injured party to the same remedy for damages as existed under the common law, namely, to allege and prove his loss in tort. In again referring to the United Gas Corp. v. Shepherd Laundries Co., supra, decision, we think it important to note that the Supreme Court therein held that Article 1438 does not make the lowest rate the legal rate. We further think it important to note the recognition by that court of the fact that while empowered to do so under the provisions of Art. 6053 et seq., V.A.T.S., neither the City of Houston nor the Railroad Commission of Texas has undertaken to fix any rates for the sale of gas to industrial consumers, and that the power of establishing rates rests in the utility itself under the provisions of Article 1435, V.A.T.S. The possession by appellee of the legal power of establishing the rate at which it will sell gas, coupled with the mentioned holding that the Article 1438 does not make the lowest rate charged the legal rate, appears to us to undermine appellants' argument that appellee could not establish a higher rate so long as there existed unexpired contracts at a lower rate. But of more compelling significance is the fact that in the Shepherd Laundries Co. case, Shepherd Laundries was paying a 19–18–17 cent rate which was "applicable to any customer contracting to use gas for industrial or other purposes for which no specific schedule is provided". [144 Tex. 164, 189 S.W.2d 487.] During part of the time the plaintiff was paying this 19–18–17 cent rate, other customers were furnished gas at a 14–13–12 cent rate for like amounts, either under written contracts calling for

service at such lower rates, or were refunded all sums paid over such 14–13–12 cent rate. During part of the same time other customers were furnished gas at a 16–15 cent rate under written contract. The jury found that the "favored customers were served under similar and like circumstances" as those for the plaintiff. The Supreme Court held, however, that during the period of time in dispute the 19–18–17 cent rate was the rate established by the utility as being available to the plaintiff. The court held that if the plaintiff paid only this fixed rate and others paid less than the fixed rate, then only discrimination was shown and not overcharge. From this holding, the conclusion appears inescapable that the existence of contracts for the furnishing of service at one rate does not prohibit a utility from establishing a new and different rate. The "established rate" appears to be that at which the utility declares that it will at any stated time furnish gas to consumers under similar and like circumstances. For that reason we hold that the rates provided in Schedules CI–202 and 202–L ceased to be, and those provided in Schedule CI–303 became the established rate when appellee declared schedule CI–303 to be the rate at which it would furnish gas to its consumers under similar and like circumstances. The continuation of service to customers who held unexpired contracts for service under the CI–202 and 202–L rates amounted to deviations from the established rate, and constituted discrimination but not, under the record, overcharges to appellants.

If we are correct in the foregoing conclusions, this case is clearly distinguishable from Texas Power & Light Co. v. Hill-Top Baking Co., supra, upon the same basis upon which the Supreme Court distinguished that case from Shepherd Laundries Co. case. Appellants also cite the case of Texas Power & Light Co. v. Doering Hotel Co., 139 Tex. 351, 162 S.W.2d 938. That holding, in so far as it is applicable to the present case, appears to us to have been expressly overruled by the Shepherd Laundries Co. decision.

The only other basis on which appellants seek to distinguish this case from and escape the effect of the holding in United Gas Co. v. Shepherd Laundries Co., supra, rests in the fact that in addition to damages for alleged overcharge, appellants also sought injunctive relief against future collection of the alleged overcharge, whereas the cited case involved only the damage element. We do not consider the authorities which appellants cite to be applicable. Having held that appellee had the legal right to establish the CI–303 rate schedule, we are unable to see how it may be enjoined from collecting such rates.

The primary legal philosophy upon which the Supreme Court denied recovery in the Shepherd Laundries Co. case, as well as in Kousal v. Texas Power & Light Co., 142 Tex. 451, 179 S.W.2d 283, rests upon the proposition that the allowance of the recovery sought "would create a legalized but endless chain of departures" from the established rate. The granting of the injunctive relief here sought would obviously have the same effect.

By point five, appellants complain of the asserted error of the trial court in granting the summary judgments favorable to appellee because of the existence of various disputed issues of fact. From their argument under such point, it is clear that appellants do not contend that any dispute exists relative to those facts which have been stated heretofore and upon which we base our conclusions relative to points one to four, inclusive. The dispute referred to is premised upon appellants' allegations of an illegal combination between appellant and another gas utility company operating in the City of Houston, and their allegation of the existence of an unlawful monopoly, violative of the provisions of Article 7426, V.A.T.S. These allegations are contained in pleadings designated as Plaintiffs' First Amended Original Petition, which pleading was, upon appellee's motion, stricken by the trial court. This action by the trial court is the basis of appellants' point six. We are of the opinion that both points must be overruled. No remedy existed at common law for private persons injured as the result of a combination or monopoly.

While Title 126, V.A.T.S., expressly vests a cause of action for such illegal acts only in the State, it has been held that damages may be recovered by an individual plaintiff or plaintiffs upon a showing that injury results from a violation of the provisions of such statutes. North Texas Gin Co. v. Thomas, Tex.Civ.App., 277 S.W. 438 (writ refused). We have already pointed out that appellants at no time alleged that the rates scheduled as CI–303 or 404 are unreasonable rates; or that those consumers favored by the extension of the lower CI–202 or 202–L rates are competitors of appellants. By pleading, by depositions, and by admissions of fact, appellants have limited their cause of action to one based upon discrimination, which they contend amounts to an overcharge. We have concluded that Schedules CI–303 and 404 reflect the established rates applicable to appellants. Therefore, having failed to allege injury in tort, and the undisputed facts proving the absence of such injury or damages, the existence of the facts to which appellants' fifth and sixth points are directed, even if disputed, are immaterial in the determination of their rights. Furthermore, it appears that the judgment denying appellants any relief, and granting recovery to appellee upon its cross-action, was entered by the trial court on November 23, 1953. By it were determined all issues raised by the pleadings of the litigants then before the court, excepting only the amount of the judgment in favor of appellee upon its cross-action. That amount appears to have been later determined upon undisputed facts, and is not complained of by appellants. The judgment of November 23, 1953, was entered after a hearing held in compliance with the provisions of Rule 166–A, T.R.C.P., for which the appellants announced ready. The pleadings designated Plaintiffs' First Amended Original Petition appears to have been filed on May 26, 1954. Therefore, even had the matter therein alleged been material, it was filed too late under the provisions of Rule 166–A, T.R.C.P., and appellee's motion to strike was properly sustained by the trial court. Rountree v. Bridwell, Tex.Civ.App., 269 S.W.2d 824.

 By their point seven appellants complain that the judgment in favor of appellee upon its cross-action includes the allocation of a proportionate part of a state occupation or gathering tax which tax has since been declared unconstitutional by the Supreme Court of the United States in Michigan-Wisconsin Pipe Line Co. v. Calvert, 347 U.S. 157, 74 S.Ct. 396, 98 L.Ed. 583. They contend that the amount of the judgment represented by such illegal tax should be stricken. Appellee answers that it is in the process of refunding voluntarily the amount represented by such tax which it has heretofore collected. These matters are entirely outside of the appellate record here presented. Aside from such original writs as may be invoked to protect its jurisdiction, this Court's jurisdiction is exclusively appellate. The matters presented by appellants' point seven are, therefore, not within our jurisdiction, and we cannot and do not undertake to pass upon such point.

Judgment affirmed.