**In the Matter of LUSCOMBE ENGINEERING COMPANY, Inc., Bankrupt.**

**United States of America and First Pennsylvania Banking and Trust Company, Appellants.**

**No. 12736.**

United States Court of Appeals Third Circuit.

Argued Jan. 22, 1959.

Decided June 24, 1959.

684

Murdoch K. Goodwin, Philadelphia, Pa. (Harold K. Wood, U. S. Atty., Joseph J. Zapitz, Asst. U. S. Atty., Alfred W. Putnam, Philadelphia, Pa., on the brief), for appellants.

Leon S. Forman, Philadelphia, Pa., (Wexler, Mulder & Weisman, Miller, Adelman & Levine, David H. H. Felix, Philadelphia, Pa., on the brief), for appellee.

Before KALODNER and HASTIE, Circuit Judges, and EGAN, District Judge.

HASTIE, Circuit Judge.

The matter in dispute in this bankruptcy appeal is the claim of a secured creditor to each of three funds acquired by the receiver, later appointed trustee and so designated throughout this opinion. The referee found the secured creditor entitled to two of the funds. Reversing the referee's order in part,

the district court held that the creditor had no security interest in any of the funds. This appeal followed.

 The bankrupt, Luscombe Engineering Co., was a subcontractor of two principal contractors, Chrysler Corporation and Philco Corporation, in the enterprise of manufacturing certain military equipment for the United States. To finance the subcontracts Luscombe borrowed money from the present claimant, First Pennsylvania Banking and Trust Co. The United States guaranteed repayment of the greater part of this loan, has made payment in accordance with its guarantee and thus stands in the position of the lender as to the amount it paid. Accordingly, we shall refer to both the bank and the United States as the claimant or the secured creditor.

The bank loan was secured by an instrument which, among other things, undertook to assign to the bank Luscombe's right to all sums due or to become due under the Philco and Chrysler subcontracts. Philco and Chrysler had notice of this assignment.

When Luscombe became bankrupt it had on hand certain tools and dies which it had made and used in the manufacture of articles for Chrysler. Pursuant to an agreement, which will be described and analysed later, the trustee disposed of these tools and dies to Chrysler, receiving in return the same amount that Chrysler would have been obligated to pay for them on completion of the original contract. The sum thus received from Chrysler is one of the funds in dispute.

The trustee agreed to surrender to Philco certain finished products which had already been manufactured pursuant to contract and were on hand when bankruptcy intervened. The price paid by Philco for these articles, as agreed with the trustee, is the second fund. Finally, pursuant to yet another agreement, the trustee completed the manufacture and assembly of certain unfinished articles and received a stipulated price from Philco. This sum constitutes the third fund.

The claimant argues that the trustee assumed the bankrupt's contracts with Chrysler and Philco, received the monies here in controversy pursuant to those contracts and, therefore, is bound by the bankrupt's antecedent valid and enforceable assignment of the future proceeds of these contracts as security for the loans which financed the performance in first instance. This argument requires a determination in the case of each fund whether payment was made under an assumption of the original Luscombe contract by the trustee, or under a distinct new agreement between the trustee and the contractor. If the latter interpretation is correct in each case, then the court below properly concluded that the claimant had no security interest in the funds in controversy.

The assumption of a bankrupt's contracts by his trustee is regulated by the following provision of Section 70, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. b:

"Within sixty days after the adjudication, the trustee shall assume or reject any executory contract, including unexpired leases of real property: *Provided, however,* That the court may for cause shown extend or reduce such period of time. Any such contract or lease not assumed or rejected within such time, whether or not a trustee has been appointed or has qualified, shall be deemed to be rejected. * * *"

 Although we agree with the district court's conclusion that the trustee did not assume the Philco contracts within the contemplation of Section 70, sub. b, we are persuaded by a basic consideration, additional to the circumstances which persuaded that court. We attribute decisive importance to the fact that, as concerned future performance, Philco had elected to terminate its contract with the bankrupt because of Luscombe's defaults before the trustee took any action with reference to the subject matter. Indeed, in the present petition to establish a security interest in the subsequent Philco payments to the trustee, the claimant ad-

mits and asserts that before the trustee arranged and agreed to release certain tools and merchandise to Philco, Philco had written to the bankrupt terminating the contract as to future performance because of "failure to deliver in accordance with the schedule".

All of the subsequent agreements and transactions between the trustee and Philco make legal and business sense when analysed as independent bargaining and new agreement about part of the original subject matter after the rescission of the original contract, insofar as it remained executory. Thus, the first negotiations after rescission concerned goods manufactured to carry out the original contract, but covered by no contract after breach and rescission. However, Philco, though under no obligation to take these articles after rescission, was in fact anxious to get them. To that end a new contract was appropriate and necessary, and was in fact negotiated. Similarly, the second bargaining about the disposition of unfinished manufactures is a new agreement for the salvage of some of the subject matter after the original contract had been abandoned.

The legal effect of the dealings between Chrysler and the trustee is less clear. There was no cancellation of the original Chrysler contract as there had been in the case of Philco. Under the terms of that contract it was the duty of Luscombe, after completion of the agreed manufacturing, to deliver certain tools and dies to Chrysler. The price of these articles was to be their cost payable in installments over the period of the contract. Though Luscombe was in default at the time of bankruptcy and the trustee never undertook to complete the contract, it was agreed during bankruptcy that the trustee would surrender the tools and dies and that Chrysler would pay him forthwith the total unpaid balance of the cost of these articles, a sum which would have been payable in installments under the original contract. The referee viewed this as a pro tanto assumption of the original contract because the articles

involved were included in it and the new agreement recited and adopted the original price "in accordance with our contract with the bankrupt". The district court, however, considered and rejected the referee's reasoning, saying:

"I am unable to agree with this conclusion of the referee. The words used in the offer, petition, and order do refer to the contract, but I do not construe them as referring to assumption or performance of it. The references are in the main to price and payment under the contract. Payment, moreover, was to be at a time earlier than that called for by the contract. In addition the words called for delivery of the tools and dies immediately, and not at the end of the period specified in the contract. These details do not constitute performance of the contract, but a radical departure from its terms." [163 F.Supp. 710.]

We think the district court's conclusion should be sustained. The quoted paragraph of the court's opinion adequately demonstrates that certain aspects of the transaction suggest the making of an independent contract, although the referee found other aspects which to him suggested the adoption of the old. In this connection, as the court properly pointed out, the transaction could not possibly have been more than the adoption of a minor and subsidiary part of the original contract which was principally concerned with the production of finished articles of military equipment. Moreover, for a trustee "to knowingly conform to the terms of a contract * * is quite different from its assumption". In re Schenectady Ry. Co., D.C.N.D.N.Y. 1950, 93 F.Supp. 67, 69. Accord, In re Public Ledger, D.C.E.D.Pa.1945, 63 F. Supp. 1008, reversed on other grounds, 3 Cir., 1947, 161 F.2d 762.

It is to be emphasized that we have here no express or even clearly implied assumption of a bankrupt's contract. The claimant's argument at most suggests ambiguous conduct by trustee and

contractor which makes at least as much sense interpreted as a new contract as it does interpreted as an assumption of the old. In such circumstances it becomes significant that Section 70, sub. b of the Bankruptcy Act contemplates, though it may not unvaryingly require, an affirmative statement of assumption if a trustee proposes to assume the bankrupt's contracts. That section also provides explicitly that, absent assumption or rejection, a contract is deemed rejected. We think the sense of this is that rejection is to be inferred unless assumption is satisfactorily proved. Fletcher v. Surprise, 7 Cir., 1950, 180 F.2d 669. This is in keeping with the recent admonition of this court in In re Forgee Metal Products, 1956, 229 F.2d 799, 802, stressing the desirability and the importance of clear and express assumption of a bankrupt's contracts by the trustee, if such a course is intended.

■■■ There is an additional consideration which should make a court reluctant to imply assumption of any of the contracts here, unless the acts of the parties cannot fairly be interpreted any other way. That is the fact that it could be of no advantage to the bankrupt estate for the trustee to assume the old contracts rather than making new bargains for the disposal of the tools and manufactures on hand. Chrysler and Philco urgently wanted the various articles here involved. Both corporations had obviously abandoned hope of further sustantial production under the subcontracts of the bankrupt. Their concern was to get from the trustee tools, dies and other articles on hand as quickly as possible for a reasonable price. New contracts of sale would satisfy these requirements and at the same time, from the trustee's point of view, would enhance the bankrupt estate. Assumption of the old contracts would not be of any greater advantage to Chrysler or Philco, but it would divert the proceeds from the bankrupt's estate to a particular secured creditor. We should not be eager to utilize any ambiguity in what the parties have said to give their transactions a significance they could not reasonably have intended if they had thought about it.

For the foregoing reasons the judgment of the district court will be affirmed.