336 F.2d 528
 BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Appellant,
v.
James A. A. SMITH, Trustee in Bankruptcy of the Estate of
Conair, Inc., a California Corporation, bankrupt, Appellee.
 No. 18729.
 United States Court of Appeals Ninth Circuit.
 Sept. 9, 1964.
 
 Samuel B. Stewart, Robert H. Fabian, Harris B. Taylor, Los Angeles, Cal., for appellant.
 George M. Treister, Quittner, Stutman, Treister & Glatt, Los Angeles, Cal., for appellee.
 Before BARNES, MERRILL and KOELSCH, Circuit Judges.
 KOELSCH, Circuit Judge.
 
 
 1
 This is an appeal by the Bank of America from an order of the district court affirming an order of the referee in bankruptcy which rejected the Bank's claim as a secured creditor against the estate of Conair, Inc., a bankrupt.
 
 
 2
 Conair, Inc., operated a machine shop at Los Angeles, California until November 1, 1960. On that date it filed an original debtor's petition pursuant to 11 U.S.C. 722, seeking to effect an arrangement with creditors as provided in Chapter XI of the Bankruptcy Act. For some reason, not appearing in the record before us, no arrangement was consummated. On January 4, 1961, Conair was duly adjudicated a bankrupt.
 
 
 3
 Conair had entered into 'basic contracts' with a number of its customers to manufacture products on their future orders.[1] When the bankruptcy proceeding was commenced, Conair was working, or about to start work, on several such orders and had on hand a considerable stock of raw material to fabricate into finished goods. A receiver, who later became trustee of the bankrupt estate, was immediately appointed; he decided to and did fill a number of the orders and, from time to time, accepted and completed additional ones pursuant to the terms of the basic contracts. The dispute here centers on the payments that the customers made on these orders.
 
 
 4
 The Bank's claim is based upon a loan of money to Conair. The loan was initially unsecured, but several months after it was made the Bank asked for and obtained from Conair security in the form of an assignment of all accounts receivable for goods that Conair would manufacture on orders placed under its customer contracts. The Bank did receive some payments under this arrangement, but part of the debt remained unpaid at the time the bankruptcy petition was filed.[2]
 
 
 5
 The controversy here is between the Bank and the trustee over accounts receivable for products manufactured and delivered by the trustee-receiver, pursuant to orders placed with Conair prior to bankruptcy. The Bank rested its claim on the assignment; it readily admitted that it had no security interest in the raw materials used to make the products, that the trustee was under no obligation to fill the orders, and that if he had not done so and had simply sold the materials the Bank would have had no claim to the proceeds except as a general creditor of Conair. But it contended that the receiver-trustee assumed Conair's contracts and thus became saddled with all the obligations they imposed upon Conair, by virtue of the familiar rule applicable to bilateral contracts that a trustee in bankruptcy takes executory contracts of the bankrupt subject to their terms and conditions, and contracts adopted by the trustee are assumed with their burdens.[3] Thompson v. Texas Mexican Ry. Co., 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 (1946). 'If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.' In re Italian Cook Oil Corp., 190 F.2d 994, 997 (3d Cir. 1951).
 
 
 6
 Following a hearing, the referee concluded that the Bank had not proved the trustee had assumed the basic contracts. He entered an order appropriate to his decision. On review, the district court sustained the referee and the Bank brought the matter here. We conclude the order was right.
 
 
 7
 An adjudication in bankruptcy does not terminate the debtor's contractual relations, but it does permit the trustee to assume or reject the bankrupt's executory contracts. 11 U.S.C. 110, sub. b; In re Lathrop, 61 F.2d 37 (9th Cir. 1932). However, the fact of assumption must be clearly made to appear, for since the contract gives rise to liabilities that are a paramount charge against the bankrupt estate, as well as creates benefits, the former may outweigh the latter to the detriment of the estate, and particularly the general creditors whose interests the trustee is primarily obliged to protect. Cf. Pacific Western Oil Co. v. McDuffie, 69 F.2d 208 (9th Cir. 1934).
 
 
 8
 The evidence in this record does not include the basic customer contracts. All that it shows is that the receivertrustee filled a number of the job orders. While it is no doubt true that these were completed consistent with those contracts, nevertheless the full scope of the bankrupt's obligations under the contracts or the term within which the bankrupt was obligated to honor orders does not appear; neither was it shown how much raw material was on hand. We believe that this condition of the record provides a proper setting to apply the rule stated by the Third Circuit, In re Luscombe Engineering Co., 268 F.2d 683, 686 (1959), that '* * * for a trustee 'to knowingly conform to the terms of a contract * * * is quite different from its assumption."
 
 
 9
 Moreover, since '* * * rejection is to be inferred unless assumption is satisfactorily proved' (Luscombe, supra at 687), the record here does not permit a conclusion that the Bank discharged its burden.
 
 
 10
 The receiver-trustee ascertained that the raw materials as such were 'practically valueless' but determined that if processed into finished goods they could be readily disposed of at a profit. He testified that he simply decided to make up the materials on hand as a means of realizing the largest recovery possible and that he had no intention to assume the contracts. And as in Luscombe (supra at 687) 'there is an additional consideration which should make a court reluctant to imply assumption of any of the contracts here, unless the acts of the parties cannot fairly be interpreted any other way. That is the fact that it could be of no advantage to the bankrupt estate for the trustee to assume the old contracts * * *' for to do so might well have resulted in a diversion of the proceeds to a preferred creditor at the expense of the estate.[4]
 
 
 11
 The order is affirmed.
 
 
 
 [1]
 These contracts apparently were in the nature of 'requirement contracts.' A 'requirement contract' is one in which one party promises to supply all specific goods or services which the other party may need during a certain period at an agreed price, and in which the other party expressly or implicitly promises that he will obtain his goods or services from the first party exclusively. Shader Contractors, Inc. v. United States, 276 F.2d 1 (Ct.Cl.1960); In re United Cigar Stores Co., 8 F.Supp. 243 (D.C.N.Y.1934); Fisher v. Parsons, 213 Cal.App.2d 829, 29 Cal.Rptr. 210, 212
 
 
 [2]
 The trustee collected payments for some accounts that accrued prior to the bankruptcy; however he ackowledged that they belonged to the Bank. Likewise, the Bank itself collected some of the accounts that reflected orders filled by the receiver-trustee; the referee considered these matters in the light of his opinion and made appropriate adjustment of the debits and credits in his order
 
 
 [3]
 The Bank contends, citing In re Italian Cook Oil Corp., 190 F.2d 994 (3d Cir. 1951) that the debtor's assignments of the accounts receivable inextricably became part of the burdens of the contracts which the receiver-trustee assumed. In view of our conclusion, we find it unnecessary to consider the contention and express no opinion regarding its validity
 
 
 [4]
 We note that the Bank apparently believes it acquired rights during the time the proceeding was conducted as one for an arrangement under Chapter XI and prior to Conair being adjudicated a bankrupt. Specifically, the Bank argues that the receiver did not reject the contracts as required by 11 U.S.C. 713(1) (See Re Greenpoint Metallic Bed Co., 113 F.2d 881 (2d Cir. 1940)); that therefore since several of the invoices represented goods made during the receivership, the assignment is valid as to their proceeds. The argument is unsound. If an arrangement fails and the court orders ordinary bankruptcy proceedings, the further proceedings are conducted in the same manner and with like effect as if a voluntary petition for adjudication in bankruptcy had been filed and an adjudication had been entered on the day when the petition for the arrangement under 722 was filed. The adjudication in bankruptcy relates back to the filing of the original petition for an arrangement. Miller v. Wooley, 141 F.2d 837 (9th Cir. 1944) cert. den. 323 U.S. 716, 65 S.Ct. 44, 89 L.Ed. 576