[Civ. No. 6576. Third Dist.—June 24, 1941.]

LOUIS DALLAPI et al., Appellants, v. PATRICK C. CAMPBELL et al., Defendants; SEBASTIAN KRAEMER et al., Respondents.

Joseph A. Ball and Frank C. Charvat for Appellants.

William C. Day, Baldwin Robertson, Russell Breckenbridge and Arthur C. Fisher for Respondents.

TUTTLE, J.—This action was brought to quiet title to several lots in the city of Los Angeles. General and special demurrers to the complaint were filed by defendants, Bank of America National Trust and Savings Association, Capital Company, Sebastian Kraemer, D & B Oil Company, Dawn Oil Company, Arthur C. Fisher, Petroleum Midway Company, and Owen E. Kupfer. The court sustained all of said demurrers without leave to amend. This appeal is taken from a judgment in favor of defendants entered pursuant to said order. The sole question is the sufficiency of the complaint to state a cause of action.

The complaint sets forth two causes of action. The first is on behalf of the first three plaintiffs. They allege that they

are the owners in fee of said lots, having acquired title July 31, 1929; that defendant Capital Company is the successor in interest of Bank of Italy, plaintiffs' grantor, in respect to the reserved rights; that said defendant executed an oil and gas lease in respect to said property, in favor of defendant Petroleum Midway Company, and that the latter entered into a similar lease with defendant Sebastian Kraemer, and that defendants claim an interest in said real property under and by virtue of a *reservation* contained in the deed to said plaintiffs, which reads as follows:

"The exclusive right reserved in the grantor, as against the grantee, to lease and contract for drilling for and to market and sell all oil, gas and other hydro-carbon substances which may be recovered and saved from said tract. One six-hundredth part of the whole royalty which may accrue to the lessors under the above oil lease shall be appurtenant to each and every one of the numbered lots in said tract and shall be paid to the respective owners thereof, except that if any lot shall be divided into two parts, the owner of each part thereof shall, by virtue of such ownership, be entitled to one-twelve-hundredth part of such whole royalty accruing to said lessors, but the grantor shall be responsible only for the distribution as herein provided, of royalties which may be actually received by it in cash, and shall bear no other obligation with relation to such lease or royalties whatsoever. The grantor may make distribution to the person or persons who shall be entitled thereto, as may be shown by the records of the grantor, and the grantor shall not be required to take notice of any change of ownership of interest unless due notice in writing of such change shall have been given it and entered on the records."

They further allege that said claim is without right, and that defendants have no interest in said property.

The second cause of action is on behalf of plaintiff Fairfield. He alleges that on July 25, 1938, the owners of said property (the other plaintiffs), executed and delivered to him an oil and gas lease covering said lots. The other allegations of this cause of action are similar to those of the first. All plaintiffs join in the prayer that it be adjudged that defendants have no right, title or interest in said property.

It is the contention of plaintiffs that the said reservation contained in the grant deed is void in that it violates both

Section 715 of the Civil Code and the rule against perpetuities. Section 715 of the Civil Code was enacted to prevent restraints upon the alienation of property, and it is plaintiffs' position that the reservation, if given effect, prevents them (the grantees) from alienating a part of the freehold, and constitutes a limitation on the fee simple title. Section 715 prevents the restraint of alienation of property beyond the period of the lives of persons in being at the creation of the limitation, or beyond a period of twenty-five years from the time of the creation of the suspension.

The rule against perpetuities, as it existed under the common law, appears at this time to be an established rule of property law in this state. The rule is well stated in *Estate of McCray*, 204 Cal. 399 [268 Pac. 647], at page 406, by adoption of the definition found in Tiffany on Real Property (2d), sec. 179.

The language employed is as follows:

"as applied to interests in land, (the rule) may be stated as follows: Any limitation or provision, the purpose or possible effect of which is to cause an estate to commence in the future, is invalid if, as a result thereof, an estate may commence more than twenty-one years after a life or lives in being."

The court in the McCray case, *supra*, continues the discussion and application of this rule at page 406, as follows:

"The rule against restraints on alienation has been, in some cases, confused with the rule against perpetuities; but the two rules, while having the same end in view, viz., that of preventing undue interference with the freedom of transfer of property, are of entirely different origin and application. The rule against perpetuities, engrafted upon our system by the constitution, relates only to future interests in property, the vesting of which is to be postponed beyond the allotted time. The rule relating to restraints on alienation, on the other hand, is statutory in origin, and has reference to an undue prevention of the transfer of estates *already vested*." (Italics ours).

Plaintiffs contend that as the execution of an oil and gas lease constitutes the conveyance of an estate in real property, and as the reservation of the grantor reserved the right to lease plaintiffs' property for the purpose of drilling for oil and gas, without specifying a period of time in which such leasehold should be executed, that the rule against perpetuities is violated, in that the right or power is reserved to create a

future interest beyond the period of the lives of persons in being, plus twenty-one years. The language purporting to reserve a right in the grantor to lease and deal with the oil and gas underlying the plaintiffs' property, reads in part as follows:

"The exclusive right reserved in the grantor as against the grantee, to lease and contract for drilling for and to market and sell all oil, gas and other hydro-carbon substances which may be recovered and saved from said tract."

The foregoing language contained in the fourth clause of the grant deed is the only expression which might be deemed to have reserved any property interest in the grantor. Clearly this language did not reserve any estate in the property conveyed. The reservation not only fails to reserve any ownership in the oil and gas, but does not even purport to constitute the grantor a lessee. The grantor, by the specific language contained in the reservation clause, only reserved a right or power to choose a lessee and distribute oil royalties among the lot owners. Whatever right may be deemed to have been reserved in plaintiffs' grantor, is in the nature of a contractual right, and does not carry with it any interest in the real property conveyed by the grant deed in question.

Because of the fact that the law of this state is unsettled as to the landowner's ownership of oil and gas in place, we shall not discuss the question as to whether the reservation by the grantor unlawfully restrains the right of plaintiffs to alienate a property interest in such oil and gas in violation of Section 715 of the Civil Code. We do conclude, however, in view of the fact that the execution of an oil and gas lease constitutes the conveyance of an estate in real property, that the reservation of a power or a right to lease plaintiffs' property, unlimited as to the time of execution of such lease, was a violation of the rule against perpetuities, and therefore void and of no effect. Such a conclusion follows from the settled rule of law regarding the creation of property interests by virtue of the execution of an oil and gas lease. The leading case in this state establishing the law as to the property interests created by an oil and gas lease is *Dabney* v. *Edwards,* 5 Cal. (2d) 1 [53 Pac. (2d) 962, 103 A. L. R. 822]. At page 11 of the opinion the court used the following language (quoted and adopted from the case of *Callahan* v. *Martin,* 3 Cal. (2d) 110 [43 Pac. (2d) 788, 101 A. L. R. 871]):

"Under the usual oil and gas lease the owner-lessor transfers to his lessee his right to drill for and produce oil and other substances. The right of the lessee presents a clear case of a *profit à prendre* in gross, a right to remove a part of the substance of the land. . . . This *profit à prendre* vests in the lessee an incorporeal hereditament, a present estate, an interest in the land, which is a chattel real *if it is to endure for years.*"

Continuing on page 12 of the Dabney-Edwards case, *supra,* the court quotes from *Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal. (2d) 637 [52 Pac. (2d) 237], as follows:

"The *profit à prendre,* whether it is unlimited as to duration or limited to a term of years, is an estate in real property. If it is for a term of years, it is a chattel real. . . . *Where it is unlimited in duration, it is a freehold interest, an estate in fee, and real property or real estate.*"

The rule of law laid down in the Dabney-Edwards case, *supra,* has been consistently followed in late decisions. A comparatively late case, *Pimentel* v. *The Hall-Baker Co.,* 32 Cal. App. (2d) 697 [90 Pac. (2d) 588], reiterates this now well accepted doctrine.

If the grantor (Bank of Italy) had reserved a leasehold interest in plaintiffs' property, or by the language of the reservation clause, reserved any estate in the real property recognized in law, such real property interest would have become vested at the time of the execution of the grant deed, and consequently not subject to attack as violative of the rule against perpetuities. ▮ The rule, as indicated, only applies to *future* interests in property, and is not concerned with such interests which are vested.

▮ Without discussing at this time the validity and effect of contractual limitations that might be inserted in a grant deed as restricting the right of a grantee to deal in the oil and gas underlying the surface of the property conveyed, we are convinced that such contractual limitations, if otherwise valid and enforceable, may not prevail where they conflict with well settled rules of property law. We are unable to construe any language of the deed in question before us at this time, as reserving any estate in the real property conveyed to plaintiffs. In fact, the language of the grant deed indicates clearly that the grantor (Bank of Italy) was not to be the lessee under the terms of the reservation, but rather, was to

have the right to designate the lessee and distribute among the numerous lot owners whatever oil royalties were received. No estate in the real property was reserved by the grantor, and the right intended to be reserved, (that of designating an oil and gas lessee, and executing to such lessee an oil and gas lease sometime in the future), was a violation of the rule against perpetuities. The oil and gas lease, if ever executed, would constitute a conveyance of an estate in real property, and by virtue of the language of the reservation clause, might be executed beyond the period of the lives of persons in being, plus twenty-one years. The rule against perpetuities was violated at the time of the execution of the deed to plaintiffs, because of the possibility that the future interest (oil and gas lease), might vest beyond the required period, as conformity to the rule does not permit speculation as to the vesting of such future interest *within the period* of lives of persons in being, plus twenty-one years. ■ The mere possibility of the property interest vesting beyond the period, constitutes the violation of the rule. We have examined the case of *Domestic and Foreign Petroleum Co. Ltd.* v. *Long,* 4 Cal. (2d) 547 [51 Pac. (2d) 73], and *Schiffman* v. *Richfield Oil Co.,* 8 Cal. (2d) 211 [64 Pac. (2d) 1081], and are unable to accept those cases as aiding the position of respondents. The language of the deed in the instant case fails to support a conclusion that the grantor intended to be the lessee, or was to "drill for or produce oil."

■ Recognizing the distinction between a general and a special power of appointment, and conceding that a general power of appointment in a donee of the power does not come within the prohibitions of the rule against perpetuities, nevertheless, the reservation of the power in the present case cannot be construed as a general power of appointment, as the grantor-donee of the power could not validly exercise such power for its own benefit, and as already indicated, it was never intended that the grantor was to be the lessee or was to operate the oil wells. ■ A general power of appointment is equivalent to a grant of absolute ownership. (Corpus Juris, Perpetuities, Vol. 48, Sec. 62, pg. 978.) The grantor-donee (Bank of Italy) reserved no ownership in the property conveyed.

■ The reservation by the grantor constituting a direct violation of the rule against perpetuities, the fact that an oil

and gas lease was actually executed some ten years subsequent to the execution of the grant deed to plaintiffs does not alter the situation.

The case of *Standard Oil Co.* v. *J. P. Mills Organization,* 3 Cal. (2d) 128 [43 Pac. (2d) 797], is not controlling of the question presented in the instant case. That case presented primarily the problem of apportionment of royalties among the various landowners, and the omission of the "oil clause" in a number of the deeds gave rise to a cause of action for reformation upon the ground of mistake. No such contention is raised in the present action.

The judgment is reversed and the trial court is directed to overrule the demurrer and permit the defendants to answer.

Pullen, P. J., and Thompson, J., concurred.