[Civ. No. 26375. Second Dist., Div. Two. Mar. 13, 1963.]

MARTIN FISHER et al., Plaintiffs and Appellants, v. RALPH M. PARSONS et al., Defendants and Respondents.

Max Fink and Hyman O. Danoff for Plaintiffs and Appellants.

Milo V. Olson and Krystal & Paradise for Defendants and Respondents.

ASHBURN, J.—Oviatt Building Associates, a limited partnership, sued Ralph M. Parsons, doing business as The Ralph M. Parsons Company, for unpaid rent accrued under an oral agreement for rental of space by defendant in the Oviatt Building in downtown Los Angeles. Defendant moved to dismiss the third amended complaint and the action as sham, fictitious, and frivolous; also for entry of summary judgment in his favor; at the same time he demurred to the complaint, relying principally upon the statute of frauds. The court sustained the demurrer without leave to amend and granted the motions, stating in the minute order: ''The contract pleaded is unenforceable for uncertainty and indefiniteness.'' From the ensuing judgment plaintiffs appeal.

The determinative question is the correctness of the ruling upon demurrer for, as appears later, the showing upon motion for summary judgment was not sufficient to warrant that relief; the other motions turned upon the same questions as the demurrer.

The third amended complaint alleges that plaintiffs acquired ownership of the Oviatt Building in September 1956, and at the same time acquired their predecessor's interest in all existing agreements between said predecessor, James Oviatt, and said defendant, which agreements were upon the same terms and conditions as the one made by the parties to the action (as hereinafter outlined): that defendant had been a tenant of space in the building for 14 years prior to the making of the agreement upon which plaintiffs sue, and had occupied varying amounts of space in the building; ''that Defendants are engineers and are engaged in the business of engineering large projects such as refineries, dams and similar projects throughout the world, and at all times herein mentioned required office space for personnel to an extent in keeping with engagements and projects from time to time in work; that Defendants' requirements for such office space varied substantially from time to time, and such requirements increased when projects are in work and in turn decreased when projects are completed.'' Following acquisition of the building by plaintiffs, defendant represented that his head office was located in the Oviatt Building and ''that office space in said building would not, under any circumstances, be relinquished until all office space in other buildings was first abandoned, and then only in the event that their needs and requirements were contracted to such an extent that they would no longer require office

space; that so long as they were in business and required office space, and so long as appropriate and usable space was available in the Oviatt Building, Defendants would utilize the same to the extent of their needs and pay a reasonable rental for the same." Defendant also said, "that their office space requirements were an unknown quantity and dependent entirely upon their being awarded engineering contracts." The terms of the oral agreement which was made in October 1956 are alleged as follows: "(1) That Plaintiffs would continue to make available, as and when needed, all space then occupied in said building by Defendants, and would provide additional office space as and when it became possible for Plaintiffs to make such space available free from commitments to others; (2) That Plaintiffs would assume the risk, so long as Defendants remained in business, in providing and maintaining available space for Defendants under the conditions and terms above described, and that Defendants would utilize the same to the extent of their requirements so long as they remained in business; (3) That Defendants would at all times utilize all space thus provided to the extent required for Defendants operations, and would relinquish space in said Oviatt Building only after first relinquishing all other office space occupied in the City of Los Angeles outside of said building; (4) That Defendants would pay reasonable rental value for space requested, from time to time, in said Oviatt Building." Plaintiffs caused other tenants to vacate as rapidly as possible and assigned their space to defendant who became the occupant of "almost all office space in said building and almost all other tenancies were severed and all other tenants and prospective tenants were refused space." Plaintiffs have fully performed all obligations on their part to be performed; defendant breached its agreement on June 30, 1958, when he vacated approximately 6½ floors of office space in said building, and again on February 28, 1959, when he moved out of an additional 1½ floors of office space; that all of the space so vacated on June 30, 1958, "was necessary to the operation of Defendants' business"; but defendant at that time removed his operations to another office building in downtown Los Angeles where he utilized space at least equivalent to the space thus abandoned, and the defendant thereafter refused to pay any rent. It is also alleged with respect to the space which defendant abandoned on February 28, 1959, that "Defendants' operations required such space." A total of eight floors were vacated and "at all

times commencing with the dates of such removal, and to the date hereof, the operations of Defendants' business has required office space to at least the extent of the areas vacated.'' The reasonable rental value is alleged, also the amount due and unpaid, and plaintiffs pray for judgment accordingly.[1]

Obviously, this was a ''requirements contract'' with a new twist, i.e., application to a new field of activity. The law pertaining to such contracts has been developed in the field of sales and is discussed almost altogether in that connection, but the question presented by requirement contracts is one of mutuality of obligation and there is nothing about that branch of the law which should preclude its application to other types of contracts. The question is strictly one of contract and whether its terms are sufficiently definite to be enforceable.

The general rules of requirement contracts are well settled and are stated in the following quotations.

1 Williston on Contracts (third ed.) section 104A, page 402: ''A bargain to sell all that a buyer may require or use in his business, where the buyer promises to buy all of his requirements from the one source, or the seller promises to sell all that he produces to one purchaser is, by the weight of authority, held to be based on consideration. 'Agreements to buy or sell what will be ''needed'' or ''required'' have been enforced by the courts with little difficulty, where the surrounding circumstances indicate the approximate scope of the promise.' Such agreements are termed 'requirement' contracts.''

46 Am.Jur., section 63, page 254: ''The weight of authority supports the rule that a valid agreement is formed when one party agrees to furnish, and the other to accept and pay for, a commodity in such quantity as the buyer's business will require or need for a designated period of time. This rule has been applied to agreements for such quantity as the buyer 'wants,' where the term 'want' is interpreted as meaning 'needs.' ''

Witkin, Summary of California Law (seventh ed.) section 75, page 81: '' (2) *Needs or Requirements Contract*. Where the proposal is to furnish all goods of a certain kind which the other party may *need* or require in a certain business for a definite period, acceptance results in a contract. The ac-

---

[1]For present purposes we accept, as we must, all allegations of fact to be true and are not concerned with the amount, if any, which plaintiffs may recover after a trial.

ceptor does not in such case agree to take any particular quantity, for he may not need any; but there is consideration because he has parted with the right to buy such goods elsewhere. (*Bartlett Springs Co.* v. *Standard Box Co., supra* [16 Cal.App. 671 (117 P. 934)] ; *Tennant* v. *Wilde* (1929) 98 Cal. App. 437, 454 [277 P. 137] ; *Andersen* v. *La Rinconada etc. Club* (1935) 4 Cal.App.2d 197 [40 P.2d 571] ; *Ross* v. *Frank W. Dunne Co.* (1953) 119 Cal.App.2d 690, 698 [260 P.2d 104] ; see 8 So. Cal.L.Rev. 243; 52 Harv.L.Rev. 836; 1947 A.S. 617; 1950 A.S. 419; 26 A.L.R.2d 1139; Unif. Com. C. § 2-306.) ''

*El Rio Oils Ltd.* v. *Pacific Coast Asphalt Co.,* 95 Cal.App. 2d 186, 193 [213 P.2d 1] : ''Fourth: *That the contract between plaintiff and defendant was not enforceable because of a lack of mutuality.* This proposition is likewise without merit. In consideration of plaintiff's promise to sell all its oil to defendant, defendant promised and agreed to take its entire requirements of oil from plaintiff and to use the best efforts to develop a market for the oil produced by plaintiff. Mutual promises constitute consideration. (*Gallagher* v. *Equitable Gas Light Co.,* 141 Cal. 699, 707 [75 P. 329].) A promise to buy all that the promisor requires or needs in its business from the promisee constitutes a valid consideration for the vendor's promise to furnish the goods or merchandise which the promisor may need.'' To the same effect see, 12 Cal.Jur.2d, § 108, p. 310; *Zimco Restaurants, Inc.* v. *Bartenders etc. Union,* 165 Cal.App.2d 235 [331 P.2d 789] ; *Great Western etc., Inc.* v. *John A. Wathen Distillery Co.,* 10 Cal.2d 442 [74 P.2d 745] ; *Long Beach Drug Co.* v. *United Drug Co.,* 13 Cal.2d 158 [88 P.2d 698, 89 P.2d 386] ; 77 C.J.S. § 20, p. 611; annotation entitled ''Contract to Furnish Needs — Mutuality'' in 26 A.L.R.2d 1139, 1142.

These principles were applied in *Ames-Brooks Co.* v. *Aetna Ins. Co.,* 83 Minn. 346 [86 N.W. 344], to an agreement to furnish to plaintiff insurance upon all his cargoes of grain for a specific season.

The California cases of *Associated Oil Co.* v. *Myers,* 217 Cal. 297 [18 P.2d 668], and *General Petroleum Corp.* v. *Loughead,* 218 Cal. 554 [24 P.2d 457], recognize the propriety of including requirement provisions in leases of real property. See also, annotation entitled ''Filling Station— Restrictive Contracts,'' 26 A.L.R.2d 219, 227. 51 C.J.S. section 214, page 819, says: ''Leases providing for a subsequent designation of the land by the lessor have been upheld. . . . Where the parties have by their conduct located

the property, it has been held that it is no objection that it was not described in the lease. A defective description of the premises may be aided by the lessee's being put into possession, and in such case the lessee cannot escape liability for the rent as provided for in the lease on the ground that the description is uncertain.''

There is nothing about a contract to furnish existing and future needs for rental space that differs essentially from one covering the furnishing of all requirements of oil (*El Rio Oils, Ltd.* v. *Pacific Coast Asphalt Co., supra*), or of any other commodity. None of the ancient real property concepts is offended by testing the validity of the instant contract through application of the same principles.

The complaint at bar shows that defendant had a variable need for floor space, expanding and contracting with the condition of business; it had been established in the Los Angeles community for many years and actually was needing and using a large quantity of floor space, both before and after the making of the agreement now under consideration. Defendant agreed to buy all his needed space from plaintiffs and plaintiffs agreed to supply that need to the extent of their ability. All of the elements of a requirement contract are present.

Any uncertainties originally inhering in the agreement had been dissipated at the time of the breach. The major one, quantity of subject matter, had been fixed by practical construction and later agreement upon the needed space, which was designated in defendant's notice of intent to vacate as the 4th, 6th, 7th, 8th, 10th, 11th and 12th floors, and parts of the 5th and 9th floors; it is the rental for that space, agreed upon and actually used by defendant, which plaintiffs seek to recover. This subsequent agreement upon a matter left open in the original agreement cures any weakness growing out of that defect. (*Noel* v. *Dumont Builders, Inc.*, 178 Cal.App.2d 691, 696 [3 Cal.Rptr. 220]; *Laughlin* v. *Haberfelde*, 72 Cal.App.2d 780, 785 [165 P.2d 544]; *Roberts* v. *Adams*, 164 Cal.App.2d 312, 314 [330 P.2d 900].) Section 33 of Restatement of the Law of Contracts, page 44, says: ''An offer which is too indefinite to create a contract if verbally accepted, may, by entire or partial performance on the part of the offeree, create a contract.'' Accord: 12 Am. Jur. section 67, page 558.

The statute of frauds (Civ. Code, § 1624, subds. 1, 4, Code Civ. Proc., § 1973, subds. 1, 4) is not a bar to enforcement of the instant agreement for it is one whose perform-

ance is not required by its terms to extend for more than one year, one which could be completed within a year however improbable that might seem. *El Rio Oils, Ltd.* v. *Pacific Coast Asphalt Co., supra,* 95 Cal.App.2d 186, 194: "A contract is invalid under subdivision 1, section 1624 of the Civil Code only where by its *very terms* it cannot be performed within a year from the date it is made. [Citations.]

"The fact that it is not probable or likely to be performed within a year from the date it is made does not make it invalid if by its terms it is possible that the contract may be performed within a year after it is made. [Citation.]

"In the present case there was nothing in the terms of the contract that prevented it from being performed within a year from the date of the agreement. It was possible that during the year plaintiff's wells might have been pumped dry or for some other reason, due to earth movements or mechanical difficulties, it would be no longer feasible to produce from them." See *Columbia Pictures Corp.* v. *DeToth,* 87 Cal.App.2d 620 [197 P.2d 580]; *Lloyd* v. *Kleefisch,* 48 Cal.App.2d 408 [120 P.2d 97]; *Raynor* v. *Drew,* 72 Cal. 307 [13 P. 866]; *Hollywood Motion Picture Equipment Co.* v. *Furer,* 16 Cal.2d 184 [105 P.2d 299]; *Mangini* v. *Wolfschmidt, Ltd.,* 192 Cal.App.2d 64 [13 Cal.Rptr. 503].

 Respondent's effort to differentiate between subdivisions 1 and 4 of the statute of frauds must prove sterile. Those subdivisions are applied indiscriminately to leases in this state and as if they were exact equivalents. Subdivision 1 refers to an agreement "that by its terms is not to be performed within a year from the making thereof." Subdivision 4: "An agreement for the leasing for a longer period than one year." The language of the two subdivisions expresses the same thought, that the agreement or lease must be so worded that it cannot be performed within a year.

Subdivision 4 does not apply to a lease for an indefinite term which can be performed within a year. (Cf. *Kendall* v. *Southward, infra,* 149 Cal.App.2d 827 [308 P.2d 915]; *Raynor* v. *Drew, supra,* 72 Cal. 307, 309; 32 Am. Jur. § 64, p. 80.) *Wickson* v. *Monarch Cycle Mfg. Co.,* 128 Cal. 156, 159 [60 P. 764, 79 Am.St. Rep. 36]: "The two subdivisions are to be read and construed together, and, as so read, a parol lease is valid for one year, but it must be for no longer than one year from the time it is made. If it be

such a lease as by its terms it is to be performed within the year from the making thereof, it is valid."[2]

██ Counsel for respondent offers as a basis for rejecting the doctrine of requirement contracts within the domain of leases of real property an argument that the instant contract offends the rule against perpetuities, in that, "[t]he alleged agreement contains conditions precedent as to vesting which may not occur within the period of the rule (Civ. Code, § 715.2)."[3] That rule has no application to vested interests. (*Haggerty* v. *City of Oakland,* 161 Cal.App.2d 407, 417 [326 P.2d 957]; *Dallapi* v. *Campbell,* 45 Cal.App.2d 541 [114 P.2d 646].)

Respondent's argument overlooks the cardinal proposition that there was an immediate vesting of all rights under the lease, for defendant was in possession at the time it was made and it became immediately effective. Defendant thereby acquired a present right to occupancy of all office space then in its possession and a potential occupancy of all other available office space in the building; the right to possession of the additional space immediately vested though the enjoyment of possession was postponed until defendant's requirements should entitle it to possession of additional available space in the building. "Subject to the possible exception of certain gifts of future interests to a class . . . both the rule against remoteness of vesting and the rule against suspension of the absolute power of alienation are ordinarily inapplicable to vested estates. They apply only to future contingent estates." (38 Cal.Jur.2d, § 14, p. 459.)

██ Postponement of possession or enjoyment of an interest that is vested does not bring the rule against perpetuities into operation. "The rule against perpetuities . . . relates only to vesting and does not apply to vested future estates though possession and enjoyment be postponed indefinitely." (*Caffroy* v. *Fremlin,* 198 Cal.App.2d 176, 181 [17 Cal. Rptr. 668].) See, 70 C.J.S. § 7, p. 583; § 10, p. 585.

██ A lease which becomes immediately effective vests in all respects at that time, and rights under it, though exer-

---

[2] As the judgment must be reversed on other grounds, we call attention to the cases of *San Francisco Brewing Corp.* v. *Bowman,* 52 Cal.2d 607, 619 [343 P.2d 1], and *Aero Bolt & Screw Co.* v. *Iaia,* 180 Cal.App.2d 728, 740 [5 Cal.Rptr. 53], which may become important upon a trial of the facts.

[3] Civ. Code, § 715.2: "No interest in real or personal property shall be good unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest and any period of gestation involved in the situation to which the limitation applies. . . ."

cisable in the future, do not have the characteristics of a contingent or future estate. See *Dallapi* v. *Campbell,* 45 Cal.App.2d 541, 546 [114 P.2d 646]; *Haggerty* v. *City of Oakland,* 161 Cal.App.2d 407, 417 and 421 [326 P.2d 957] (the disagreement in the court in this case hinged upon a difference of opinion as to whether the lease itself had vested); *Oliver* v. *Schene,* 182 Cal.App.2d 473, 481-483 [6 Cal. Rptr. 461]; 70 C.J.S. § 11, p. 588.

This principle is made plain by authorities dealing with a right of perpetual renewal. We do not deal here with that right but authorities discussing it do lend emphasis to the principle that all phases of a leasehold become vested at the same time.

■ 32 Am.Jur., section 967, page 813: "It has been generally held that a provision in a lease for perpetual renewal is not violative either of the rule against perpetuities or of statutes limiting the period during which the absolute power of alienation may be suspended. The reason for this is that the covenant to renew may be taken as part of the lessee's present interest. ■ It is obvious that a perpetual lease, or a lease containing a covenant for perpetual renewal, is not a restraint or limitation upon the power of alienation of the fee, for there are at all times persons in being who by joining can convey the fee." This language was quoted with approval in *Ehrhart* v. *Spencer,* 175 Kan. 227 [263 P.2d 246, 250], as are certain A.L.R. annotations to the same effect. One of them, 3 A.L.R. 498, says: "Save in a single instance (*Morrison* v. *Rossignol, Infra* [5 Cal. 64], it has been generally held that perpetual leases and leases containing a covenant for perpetual renewal are not violative, either of the rule against perpetuities or of statutes limiting the period during which the absolute power of alienation may be suspended."

*Conley* v. *Gaylock,* 144 W.Va. 457 [108 S.E.2d 675], dealt with a lease of indefinite duration: " 'The life of this lease shall be indefinite, being terminated only by the lessees inability to pay the monthly rental, or his decision to move his business to another location. . . .' " (P. 676 [108 S.E. 2d].) Concerning a claim of violation of the rule against perpetuities the court said, at page 677 [108 S.E.2d]: "Whatever right the lessee obtained by virtue of the written lease agreement, whether termed 'property', 'a thing of value', or 'an estate in realty', he obtained immediately upon the operative date of the lease. It was not a right or estate

designed to 'vest' or to become operative at a future date violative of the rule against perpetuities. 'The rule against perpetuities is not a rule of construction, but is an arbitrary, absolute, and fundamental canon to prevent indefinite control by a grantor or testator over the *devolution* of property.' (Italics supplied.)'' Quoting from *Brookover* v. *Grimm*, 118 W.Va. 227 [190 S.E. 697], it was further said: '' 'But the rule against perpetuities has reference to the *time within which the interest vests* and is not concerned with the postponement of the enjoyment of such interest.' (Italics supplied.)'' (P. 678 [108 S.E.2d].) At page 679 [108 S.E. 2d]: ''The Court holds, therefore, that the lease in question is not void or otherwise invalid or unenforceable because the duration thereof is indefinite or because the continuance thereof is left solely to the option of the lessee. The Court holds further that the lease does not violate the rule against perpetuities nor the rule relating to restraint upon alienation. Notwithstanding the lease, the lessor may alien or convey the real estate in question, but subject, of course, to the lease.''

*Williams* v. *J. M. High Co.*, 200 Ga. 230 [36 S.E.2d 667, 162 A.L.R. 1139], held that there was no perpetuity growing out of a provision of a will that '' '[t]he properties on Whitehall and Hunter Streets . . . now occupied by J. M. High Company, shall be disposed of as follows: As long as the corporation continues in business and is financially successful and desires to occupy these properties, they are not to be sold, but said corporation shall have the right to occupy them at their fair market value for rent. . . .' '' (162 A.L.R. p. 1141.) The court said, in part (at page 1145 of 162 A.L.R.): ''While the exact question here presented has not been passed upon by this court, it seems to be an almost universally recognized rule in other jurisdictions that a perpetual lease, or a perpetual right to renew a lease, is not violative of the rule against perpetuities.''

The annotation in 3 A.L.R. 498 refers to *Morrison* v. *Rossignol*, 5 Cal. 64 as a single instance in which the contrary has been held. Examination of that decision discloses only this: ''A covenant for a lease to be renewed indefinitely at the option of the lessee, is, in effect, the creation of a perpetuity; it puts it in the power of one party to renew for ever, and is therefore against the policy of the law.'' (P. 65.) There is no explanation of the ruling and no citation of supporting authority. ▮ The court seems to have overlooked the fact that it is the vesting rather than

the termination of an interest which is affected by the rule against perpetuities. "Since the rule is concerned with the creation and not with the termination of an estate, it has been held that a lease of land for any number of years does not violate the statute against perpetuities, and a perpetual lease or a lease containing a covenant for perpetual renewal does not violate the rule." (41 Am.Jur., § 34, p. 78.) *Erickson* v. *Boothe,* 79 Cal.App.2d 266, 272 [179 P.2d 611], says: "Options for renewal such as that under consideration are generally held to be in the nature of a present demise for the full period including the renewal period."

*Becker* v. *Submarine Oil Co.,* 55 Cal.App. 698 [204 P. 245], makes a holding in the instance of an oil lease which is contrary to *Morrison, supra,* saying at page 700: "On the other hand, a clause providing for perpetual renewals at the option of the lessee is held to be enforceable when it appears that it was clearly the intention of the parties that the lessee should have that right. [Citations.] This provision is also clearly stated in *Diffenderfer* v. *Board etc. Public Schools, supra* [120 Mo. 447 (25 S.W. 542)]. In the instant case the language is so plain that no room is left for construction. The parties have made it clear that it was their intention that the lessee should have the right of renewal in perpetuity. The lessee exercised his right by giving the lessor a written notice to that effect. This was all that was necessary to extend the lease for another term. [Citations.]" (Hearing in Supreme Court denied.)

*Epstein* v. *Zahloute,* 99 Cal.App.2d 738 [222 P.2d 318], holds, on authority of *Morrison* v. *Rossignol, supra,* 5 Cal. 64, 66, that a clause providing for perpetual renewals of a lease creates a perpetuity and hence is invalid. It distinguishes the *Becker* case upon the ground that an oil lease "creates a profit *a prendre* and vests in the lessee an estate in real property," and in effect that this vested right could not be within the perpetuity rule. A commentator in 7 U.C.L.A. Law Review, at pages 287-288, observes that "[i]t is difficult to find in such statement any reason for distinguishing options to renew oil and gas leases from options to renew ordinary leases, and other jurisdictions do not attempt such a distinction." This seems to us to be sound. There was no application for a hearing in the Supreme Court in the *Epstein* case. Such a hearing was denied in *Becker*.

We would emphasize the fact previously stated, that we do not deal with an option for perpetual renewal here, but

do have before us a presently vested right of defendant to occupy in the future, when its business needs have grown to that extent, all office space in the Oviatt Building which plaintiffs could make available to him, by ousting other tenants or otherwise. No perpetuity and no suspension of the power of alienation here.

Respondent suggests a possibility that Civil Code section 718 is applicable here—the section which prohibits leasing of town or city lots for a period in excess of 99 years.[4] Again counsel relies upon *Morrison* v. *Rossignol, supra,* 5 Cal. 64, 66. The case does not pass upon that point. However, *Epstein* v. *Zahloute, supra,* 99 Cal.App.2d 738, does state that a right to perpetual renewal of a lease violates said section. But the language of section 718 is almost identical with that of section 717, Civil Code,[5] which forbids leasing of land for agricultural or horticultural purposes "for a longer period than fifteen years." *Kendall* v. *Southward, supra,* 149 Cal. App.2d 827, after reviewing numerous authorities, held that a lease of agricultural land for the term of the lessor's natural life does not violate the statute except to the extent to which it may actually run over the 15-year period. The reasoning is found in this quotation from 32 Am. Jur. section 64, page 80: " '. . . A lease for life, although it may extend for a period longer than that specified in the prohibition, is not within the prohibition; where the term is specified in the lease and exceeds the limitation, it is void per se, but where it is left indefinite and its termination depends upon the contingency of death, which may happen within the period of limitation, it cannot be said to be void ipso facto as being made for a period longer than that permitted by the restriction. . . .' " (P. 828.) Neither this case nor *Epstein* has been reviewed by the Supreme Court. We find the reasoning of *Kendall* more persuasive than that of *Epstein*. As the language of section 718 is "for a leasing or granting period in excess of 99 years" and that of 717 is "for a longer period than fifteen years," we consider *Kendall* here applicable and hold that the instant lease does not offend section 718, Civil Code.

---

[4] Civ. Code, § 718: "No lease or grant of any town or city lot, which reserves any rent or service of any kind, and which provides for a leasing or granting period in excess of 99 years, shall be valid. . . ."

[5] Civ. Code, § 717: "No lease or grant of land for agricultural or horticultural purposes for a longer period than fifteen years, in which shall be reserved any rent or service of any kind, shall be valid . . . ."

Defendant was in possession at the time the agreement was made; continued in possession at all times thereafter until he moved out of the leased premises without any cause shown. The weakness of the contract, *if any,* stems from lack of mutuality of enforceable obligations, not from postponement of vesting a future estate.

 The motion for summary judgment should have been denied. That procedure is not one for testing the sufficiency of the complaint or answer. To warrant the granting of the motion a supporting affidavit must be filed which shows the existence of a sufficient cause of action or defense in favor of the moving party. "A summary judgment is proper only if the affidavits in support of the moving party 'would be sufficient to sustain judgment in his favor. . . .' " (*Desny* v. *Wilder,* 46 Cal.2d 715, 725 [299 P.2d 257].) The only affidavit presented in support of the motion at bar does not attempt an affirmative showing of a right to judgment in defendant's favor; it rests upon some minor phases of the case, namely, the fact that the rents were always paid monthly and a conclusion that "defendant The Ralph M. Parsons Company occupied space in the Oviatt Building on a month-to-month tenancy basis, and has paid all rent for space occupied." This conclusion is offset by that of the opposing affidavit of Louis Cooper, who said: "That at no time did Defendants occupy said Oviatt Building on a month to month tenancy, but rather said Defendants agreed to occupy space in said building pursuant to their requirements and for so long as they remained in business, or until after first relinquishing all other office space occupied in the City of Los Angeles." The moving party incorporated in the affidavit copies of the notices of intention to vacate which contain a purported explanation of the reason for same, which reason no affiant attempts to authenticate.

Other points raised by counsel need no discussion.

Judgment reversed.

Fox, P. J., and Herndon, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied May 8, 1963.