[Civ. No. 39436. Second Dist., Div. Two. Dec. 7, 1972.]

ELIZABETH HOLLISTER KEVILLE et al., Plaintiffs and Appellants, v. HOLLISTER COMPANY et al., Defendants and Respondents.

**COUNSEL**

Covey & Covey and Robert R. Lee for Plaintiffs and Appellants.

Lloyd E. Iverson, Eric R. Van de Water, Griffith & Thornburgh and Kalmbach, DeMarco, Knapp & Chillingworth for Defendants and Respondents.

**OPINION**

**FLEMING, J.**—The Hollister Estate Company, a California corporation (Estate), owned the Hollister Ranch in Santa Barbara County. In July 1962 Estate conveyed to plaintiffs and others (all shareholders in Estate) as tenants in common a 50 percent undivided interest "in any and all minerals in, upon or under, and any and all mineral rights in and to" the Hollister Ranch. Estate, however, reserved for itself, its successors and assigns, ". . . the sole and exclusive right and power to enter into and execute leases and agreements for the purpose of prospecting, exploring and mining for minerals thereon, and for the purpose of extracting and transporting minerals; and the right to do any and all things on said real property necessary or proper for mining purposes, or for the purpose of mining, or boring or exploring for oil or other minerals thereon."

In August 1965, Estate conveyed its interests in the Hollister Ranch to defendant Hollister Company, which in turn conveyed portions of its interests to other defendants.

■■■ In this action for declaratory relief plaintiffs, owners of 9.105 percent of the non-executive mineral interest,[1] sought a declaration

---

[1] A *mineral estate* is the entire bundle of rights a landowner has in the minerals in his land. A *royalty interest* is the right to receive a share of the minerals taken from the land, or the proceeds therefrom, free of the costs of production. An *executive*

that defendants' executive interest was invalid. The trial court declared the executive interest valid, and plaintiffs have appealed.

Plaintiffs contend the executive interest is invalid because (1) it violates the rule against perpetuities, and (2) it is a non-transferable power.

### 1. *Rule Against Perpetuities.*

The rule against perpetuities is set forth in Civil Code section 715.2: "No interest in real or personal property shall be good unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest and any period of gestation involved in the situation to which the limitation applies." Plaintiffs contend that defendants' executive interest violates the rule against perpetuities because it consists of the right to vest a leasehold at a time beyond the period allowed by the rule against perpetuities.

Plaintiffs' authority is *Dallapi* v. *Campbell,* 45 Cal.App.2d 541 [114 P.2d 646]. In that case a grantor transferred all rights in property to a grantee, reserving only the exclusive power to lease mineral rights in the property and distribute royalties to the owners of the property. The court construed the grantor's executive interest as a special power of appointment which the grantor-donee could not validly exercise in its own favor: ". . . it was never intended that the grantor was to be the lessee or was to operate the oil wells." (45 Cal.App.2d at p. 547.)[2] The court reasoned that a special power of appointment was not an estate in real property and therefore could not itself amount to a vested interest. The court then concluded that the existence of a special power violated the rule against perpetuities because it empowered the vesting of an estate in real property (a mineral lease) at a time beyond lives in being plus 21 years.

Assuming the premise of *Dallapi* v. *Campbell*[3] that an executive interest

---

interest (right) is the right to execute leases to secure the exploration and development of the minerals. A *non-executive mineral interest* typically consists of a royalty interest plus the right to share in bonuses and delay rentals payable under any lease, but it does not include the right to execute leases or, generally, the right to enter the land and take minerals. (See 1 Williams and Meyers, Oil and Gas Law, § 301, pp. 431-443.)

[2]More accurately, the grantor's power would have been a "hybrid" power of appointment, not general because not exercisable in favor of the grantor-donee, and not special because not limited to a restricted class of appointees. (Rest., Property, § 320, com. a.)

[3]*Dallapi* v. *Campbell* has been much discussed by the commentators. See Jones, *The Rule Against Perpetuities As It Affects California Oil and Gas Interests* (1960) 7 U.C.L.A. L.Rev. 261; 2 Williams and Meyers, Oil and Gas Law, § § 323-326, pp. 12.2-81 (1959); Everett, *The Exclusive Power of One to Lease a Mineral Interest of Another* (1957) 3 Rocky Mt. Mineral L. Inst. 509; Jones, *Problems Presented by the Separation of the Exclusive Leasing Power from the Ownership of Land,*

is some kind of power of appointment, nevertheless we do not find that defendants' executive interest violates the rule against perpetuities. Incident to the executive interest is "the right to do any and all things on said real property necessary or proper for mining purposes, or for the purpose of mining, or boring or exploring for oil or other minerals thereon." Defendants, therefore, could name themselves lessees. Viewing the executive interest as a power of appointment, the nature of the power that defendants held was a general power of appointment. (*Estate of Rosecrans*, 4 Cal.3d 34, 39 [92 Cal.Rptr. 680, 480 P.2d 296].) A general power of appointment is an estate in real property which vests when it becomes exercisable. (Simes, Law of Future Interests (2d ed.) pp. 292, 295.) Because the general power of appointment was presently exercisable, it was presently vested, and is thus not subject to the prohibition against perpetuities. (See Aronow, *Case Notes* (1941) 15 So.Cal.L.Rev. 119.)

An alternative to the classification of an executive interest as a power of appointment views a mineral estate as a collective bundle of rights, which includes the right to go on the land to extract minerals, the right to a share of the minerals or their proceeds, and the right to designate who may exercise these first two rights. At bench, defendants' grantor retained all rights in the mineral estate except the share in the income of the mineral proceeds it conveyed to plaintiffs. That share, a right to receive income from the mineral estate, is an incorporeal hereditament in the nature of rent carved out of the mineral estate. As such it is an interest in land. (*Callahan* v. *Martin*, 3 Cal.2d 110, 119-124 [43 P.2d 788, 101 A.L.R. 871].) Although the receipt of income may be uncertain in fact, the right to receive that income is present and established at law, and as such it is a vested right. The bundle of rights retained by defendants' grantor, i.e. the remaining mineral rights, is likewise present, established, and vested, subject only to the incorporeal burden of plaintiffs' non-executive mineral interest. Since all interests in the mineral estate are vested, the rule against perpetuities has not been violated. (Accord, *Hanson* v. *Ware* (1955) 224 Ark. 430 [274 S.W.2d 359, 46 A.L.R.2d 1262].) Like any other owner of property defendants possess the right to lease the property, now or sometime in the future.

*Minerals, or Royalty* (1957) 2d Annual Inst. on Oil and Gas Taxation 271; Kuntz, *The Rule Against Perpetuities and Mineral Interests* (1955) 8 Okla.L.Rev. 183, 190; Meyers, *The Effect of the Rule Against Perpetuities on Perpetual Non-Participating Royalty and Kindred Interests* (1954) 32 Texas L.Rev. 369, 392-395; Morris, *Some Legal Consequences Resulting from a Separation of the Incidents of Ownership of a Mineral Interest* (1954) 7 Okla.L.Rev. 285, 290-291; Walker, *Developments in the Law of Oil and Gas in Texas During the War Years—A Resume* (1946) 25 Texas L.Rev. 1, 18; Aronow, *Case Notes* (1941) 15 So.Cal.L.Rev. 119.

■ Nor does it appear the transaction at bench violates the policy of the rule against perpetuities. The prohibition against perpetuities is designed to prevent inconvenient fettering of property (Rest., Property, § 370, com. c). By permitting the executive interest to remain in one entity, the development of the whole property is promoted, and a concerted decision for the disposition of the property can be more readily carried out. "Alienability is actually promoted by concentrating the power to lease in the hands of one of the mineral owners." (Maxwell, *A Primer of Mineral and Royalty Conveyancing,* 3 U.C.L.A. L.Rev. 449, 470.) "This method of holding the leasing power in a single party is a practical and legally unobjectionable means of simplifying the lessor-lessee relationship. The parties found it convenient and agreeable when they were dealing with each other, and there appears to be no reason why the courts should not recognize and apply it as the parties intended." (*Hollister Co.* v. *Cal-L Exploration Corp.,* 26 Cal.App.3d 713, 721 [102 Cal.Rptr. 919].) "Certainly our function is not to interpret the rule so as to create commercial anomalies." (*Wong* v. *Di Grazia,* 60 Cal.2d 525, 533 [35 Cal.Rptr. 241, 386 P.2d 817].)

## 2. *Transferability.*

■ Plaintiffs additionally contend that the Hollister Estate Company's executive interest was in the nature of a personal contract and therefore could not be transferred without the consent of plaintiffs.

This contention is without merit. Estate is a corporation "which, in the nature of things, cannot perform personal functions." (*Haldor, Inc.* v. *Beebe,* 72 Cal.App.2d 357, 365 [164 P.2d 568].) Nothing in the deed or the circumstances surrounding its execution suggests that the rights reserved under it were intended to be non-transferable. (*Farmland Irrigation Co.* v. *Dopplmaier,* 48 Cal.2d 208, 223 [308 P.2d 732, 66 A.L.R.2d 590].) The fact is quite to the contrary, for the deed specifically reserves the executive interest "unto Grantor and its successors and assigns."

The judgment is affirmed

Herndon, Acting P. J., and Compton, J., concurred.