**J.J. ELICK, et ux., Appellants,**

v.

**CHAMPLIN PETROLEUM COMPANY,
et al., Appellees.**

No. C14–83–777CV.

Court of Appeals of Texas,
Houston (14th Dist.).

April 25, 1985.
Rehearing Denied July 18, 1985.

John V. Elick, Bellville, for appellants.

Charles J. Wilson, E.H. Thornton, Jr., Wheat, Thornton & Burnett, Houston, for appellees.

Before JUNELL, MURPHY and SEARS, JJ.

## OPINION

MURPHY, Justice.

This is an appeal from a summary judgment rendered in a declaratory judgment action. The trial court construed a deed reservation as failing to reserve executive rights in appellants over an 89.38 acre tract of land and this appeal resulted. Reversed and Remanded.

On March 12, 1945, J.J. and Virginia Elick conveyed the surface and mineral estates in an 89.38 acre tract of land located in Burleson County, Texas, to J.A. Maddox. This deed contained the following reservation:

"SAVE AND EXCEPT an undivided $\frac{1}{32}$ royalty interest in and to all of the oil, gas and other minerals in, to and under and that may be produced from the land herein conveyed to be paid or delivered unto said J.J. Elick, his heirs, or assigns, as his own property free of cost to him from oil, gas and/or other minerals forever, together with the right of ingress and egress at all times for the purpose of storing, treating, marketing and removing the same therefrom.

It is further expressly agreed and understood that the said J.J. Elick, his heirs or assigns shall participate in one-half of the bonus paid for any oil, gas or other lease covering said land, and shall participate in one-half of the money rentals which may be paid to extend the time within which a well may be begun under the terms of any lease covering said land and said J.J. Elick, his heirs or assigns shall join in the execution of any future oil, gas, or mineral lease."

Through mesne conveyances the surface and minerals in the 89.38 acre tract of land passed to appellee, Mabel D. Norman. Norman's interest was made subject to all prior reservations.

On April 26, 1976, Norman executed an oil, gas, and mineral lease, leasing the 89.38 acre tract along with a contiguous 67.52 acre tract, to Fred Prickett. This lease was subsequently assigned to appellees Champlin Petroleum Company, Columbia

Gas Development Corporation, Trinity Resources, Inc., Charles W. Alcorn, Jr., Fred C. Alcorn, Fisher-Webb, Inc., and Edwin L. Cox, with certain working interests and overriding royalties retained.

Although the Norman Lease covered two separate tracts, it did not contain an "entirety clause" or provide for the apportionment of royalty payments. In fact, the lease contained a "separate tracts" clause which stated that no pooling or unitization of royalty interests was intended or implied from the inclusion of separate tracts within the lease.

Appellants brought suit against appellees seeking to cancel and release the 1976 oil, gas and mineral lease (Norman Lease) covering the two tracts of land containing 89.38 and 67.52 acres. Appellants are the owners of a $\frac{1}{32}$ royalty interest along with a ½ interest in all bonuses and rentals accruing under all oil and gas leases covering the 89.38 acre tract of land, and appellees maintain surface, mineral royalty, overriding royalty and leasehold interests under the Norman Lease.

Both appellants and appellees filed motions for summary judgment and the motion filed by the appellees was granted. The trial court found as a matter of law that appellants' reservation of the right to "join in the execution of any future oil, gas and mineral lease" did not constitute the reservation of an executive right. In addition, the court found that a reservation of executive rights by a party other than a mineral owner was void as an unlawful restraint on the alienation of the mineral estate. Consequently, the court concluded that Mable Norman, the owner of one-hundred percent of the mineral estate, owned the exclusive executive rights and had the power to execute a valid oil, gas and mineral lease covering the 89.38 acre tract.

This appeal requires us to determine, under appellants' four points of error, whether, as a matter of law (1) appellants reserved executive rights in the 89.38 acre tract (Point of Error No. 1), (2) a reservation of executive rights by a royalty owner constitutes a restraint on the alienation of the mineral estate (Point of Error No. 2), (3) failure to obtain appellants' joinder in the execution of the Norman Lease rendered the lease void as to appellants' interest alone or the entire leasehold estate (Points of Error Nos. 3 and 4(1)), and (4) the Norman Lease lapsed by its own terms (Points of Error Nos. 4(2), 4(3), 4(4) and 4(5)).

The summary judgment proof contains two stipulations by the parties agreeing that "Champlin Petroleum Company as operator for the holders of working interest under said lease has not drilled, and is not producing from the 89.38 acre tract, but has drilled a well and is producing from the 67.52 acre tract."

## I.

## EXECUTIVE RIGHTS

The trial court incorrectly held that, as a matter of law, appellants failed to reserve executive rights in the 89.38 acre tract of land. Both parties agreed that the reservation was unambiguous and, thus, the primary concern of the court was to ascertain the true intention of the parties. *Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193, 196 (Tex. 1962). There being no allegation of fraud, accident or mistake, and no attempt to reform the reservation, the court must give effect to the intention of the parties expressed by the terms of the reservation. *Woods v. Sims*, 154 Tex. 59, 273 S.W.2d 617, 620 (1954). It is generally considered that parties intend every clause to have effect in evidencing their agreement, and their expression should not be thwarted except in the instance of plain and necessary repugnance. Thus, even if different parts of the reservation appear to be contradictory, the court will, when possible, harmonize the parts so that none of the provisions will be rendered meaningless. *Woods*, 273 S.W.2d at 620–21. *See also R. & P. Enterprises v. LaGuarta, Gavrel & Kirk*, 596 S.W.2d 517, 518–19 (Tex.1980).

In considering the reservation in the light of these principles, it must be

noted that the owner of a mineral estate possesses a bundle of interests which can be separated, conveyed or reserved upon any terms as the mineral owner deems proper. *Schlittler v. Smith,* 128 Tex. 628, 101 S.W.2d 543, 544 (1937); *Martin v. Snuggs,* 302 S.W.2d 676, 678 (Tex.Civ.App. —Fort Worth 1957, writ ref'd n.r.e.). These mineral rights consist of the rights to participate in bonuses, rentals and royalties; the exclusive right to enter the premises for the purpose of drilling; and the right to execute oil, gas and mineral leases. *See* 1 H. Williams & C. Meyers, Oil and Gas Law § 302 at 447 (1959). The mineral rights conveyed and those retained are disclosed by an analysis of the provisions of the reservation.

The first sentence of the 1945 deed, which reserved to the appellant grantors, their heirs and assigns, "an undivided $\frac{1}{32}$ royalty interest in and to all of the oil, gas and other minerals" in the 89.38 acre tract, effects a reservation of a royalty interest. At this point, the reservation leaves the grantee Maddox with a full mineral estate, and its appurtenant mineral rights, burdened by a $\frac{1}{32}$nd royalty interest.

However, the mineral estate conveyed is limited by the provisions of the second sentence. By those proscriptions, the grantee does not receive all of the bonuses paid for any lease of the mineral estate nor all of the rentals paid to perpetuate the lease. Consequently, appellants retained a $\frac{1}{32}$nd royalty interest and ½ of all bonuses and rentals accruing under all future oil, gas and mineral leases.

The reservation of ½ of the bonus and rental is followed by a provision which states that the grantors "shall join in the execution of any future oil, gas or mineral lease." This language, considered in its proper context, is a further limitation on the mineral estate conveyed. Here the grantors have no right to enter and drill; their sole right is to join in the execution of all future oil, gas and mineral leases covering the 89.38 acre tract. In short, appellants have reserved an ordinary royalty interest plus the right to join Maddox, or

his successors in title, in the execution of leases for the protection against unfair dealing. For example, appellants may have been able to contract for a larger bonus and rental payment under the Norman Lease or an entireties clause which would have entitled them to a royalty interest upon production had on the 67.52 acre tract.

Appellees contend that the executive right cannot be exercised by a non-mineral owner. We disagree. It has long been accepted that all appurtenant mineral rights, including the executive rights, are severable from the mineral estate. The Texas Supreme Court in *Pan American Petroleum Corp. v. Cain,* 163 Tex. 323, 355 S.W.2d 506, 510 (1962), stated:

> The rights of the party whose mineral interest is subject to a leasing power held by another must also be considered, and it is well to remember that the executive right, even if held to be perpetually separated from ownership of the interest over which it is to be exercised, will not necessarily remain in the hands of a single person.

*See also Superior Oil Co. v. Stanolind Oil & Gas Co.,* 150 Tex. 317, 240 S.W.2d 281, 285–86 (1951); *Brown v. Smith,* 141 Tex. 425, 174 S.W.2d 43, 46 (1943).

This analysis gives effect to and harmonizes every provision of the reservation clause, thereby clearly disclosing the intention of the parties. That meaning is that appellants conveyed the mineral estate and all of its appurtenant mineral rights *save and except* a $\frac{1}{32}$nd royalty interest, ½ of all bonuses and rentals and the right to join in the execution of all oil, gas and mineral leases.

Appellants' first point of error is sustained.

## II.

## RESTRAINT ON ALIENATION

Appellants' reservation of executive rights did not constitute an unlawful restraint on the alienation of the mineral

estate. As discussed earlier, the executive rights are often separated from the mineral estate and can be held by more than one person. *Schlittler v. Smith*, 101 S.W.2d at 544; *Pan American Corp. v. Cain*, 355 S.W.2d at 510. The fact that appellants are required to join in the execution of a valid oil, gas and mineral lease covering the 89.38 acre tract does not interfere with the power to lease the mineral interest any more than if appellants' reserved exclusive executive rights to lease the mineral interest. *See* Meyers, *The Effect of the Rule Against Perpetuities on Perpetual Non-Participating Royalty and Kindred Interests*, 32 TEX.L.REV. 369, 408–25 (1954).

■ Appellees rely on *Outlaw v. Bowen*, 285 S.W.2d 280, 213 (Tex.Civ.App.—Amarillo 1955, writ ref'd n.r.e.) as their only authority for the proposition that separation of the executive right and the mineral estate results in an unlawful restraint on alienation. This case is distinguishable from the case at bar. In *Outlaw v. Bowen*, the disputed transaction was a reconveyance of a one-half mineral interest to Bowen by Outlaw, who retained the surface and remaining minerals, with the provision that "no conveyance or assignment of such royalty shall ever be made except in whole" on the penalty of forfeiture of the entire mineral interest. The court struck the provision based on the failure of the instrument to provide for an enforceable penalty in the event of violation. Clearly, the provision in *Outlaw v. Bowen* did not involve a reservation of executive rights, but attempted to restrict the owner of an undivided one-half mineral estate from transfering or conveying a royalty interest, or appurtenant mineral right, less than the whole. This prevented Bowen from alienating her interest without the joinder of Outlaw.

A reservation of executive rights has never been held to be a restraint on the alienation right of a mineral owner. Appellants' reservation did not prevent appellees from entering the land and developing the land or from selling, transfering or mortgaging the mineral interest. In short, Nor-

man could not transfer an interest or power that she did not own—the exclusive right to lease the minerals to another for development of the minerals.

Accordingly, appellants' second point of error is sustained.

### III.

### FAILURE TO OBTAIN JOINDER

■ Due to the fact that appellants successfully reserved the right to join in the execution of all oil, gas and mineral leases covering the 89.38 acre tract and did not execute or ratify the Norman Lease, the Norman Lease is void insofar as it covers the entire 89.38 acre tract of land. This is supported by the facts adduced at the summary judgment hearing.

■ We cannot sustain appellees' contention that the Norman Lease, if held invalid, is only void as to appellants' $\frac{1}{32}$nd royalty interest in the 89.38 acre tract. The law of co-tenants does not apply in the case at bar; the parties do not hold undivided interests in the mineral estate and appellants' expressly reserved executive rights.

Appellants' third and fourth (1) points of error are sustained.

### IV.

### LAPSE OF THE LEASE

■ The trial court was correct in holding that no genuine issue of material fact existed as to the extension of the Norman Lease beyond the primary term. The parties stipulated that production had been obtained in the 67.52 acre tract. Under the terms of the lease, the lease would endure for a period of five years "and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation of more than ninety (90) consecutive days." Operations are defined in the lease as "production whether or not in paying quantities." In addition, the lease contains no "Pugh clause" which would have prevented production on the 67.52 acre tract from perpetuating the lease over the 89.38 acre tract.

Appellants' fourth (2), (3), (4) and (5) points of error are overruled.

The judgment is accordingly reversed and remanded for further proceedings consistent with this opinion.

SEARS, Justice, dissenting.

I respectfully dissent.

The only persons with authority to execute mineral leases are the owners of the minerals. *Klein v. Humble Oil & Refining Co.*, 126 Tex. 450, 86 S.W.2d 1077, 1079 (1935). Appellants had no ownership interest in the mineral estate, therefore they could have no right to execute the leases thereon. "Only owners of mineral interests have authority to execute such leases." *Grissom v. Guetersloh*, 391 S.W.2d 167, 171 (Tex.Civ.App.—Amarillo 1965, writ ref'd n.r.e.).

The history of Texas oil and gas law is that the executive right is a "power coupled with an interest." A power coupled with an interest is defined as "a power accompanied by or connected with an interest in the property subjected to the power." *Superior Oil Co. v. Stanolind Oil & Gas Co.*, 230 S.W.2d 346 (Tex.Civ.App.—Eastland 1950), *aff'd*, 150 Tex. 317, 240 S.W.2d 281 (1951); *see also Jones v. Guy*, 71 S.W.2d 913 (Tex.Civ.App.—Texarkana 1934, writ dism'd). This power of executive right has been further defined as follows:

> In order that a power may be irrevocable because coupled with an interest, it is necessary that the interest shall be in the subject matter of the power, and not in the proceeds which will arise from the exercise of the power. The person clothed with the power must derive, under the instrument creating it or from the nature of the relation, a present or future interest in the thing or subject itself on which the power is to be exercised, and not merely that which is produced by the exercise of the power. The question is, does the agent have an interest or estate in the subject matter of the agency independent of the power conferred, or does the interest or estate

accrue by or after the exercise of the power conferred. If the former, the agency is coupled with an interest; if the latter, it is not. It has also been laid down that the estate or interest vested or created in the agent must be such as the agent could transfer or convey in his own name in the event of the death of the principal.

*Superior Oil Co. v. Stanolind Oil & Gas Co.*, 230 S.W.2d at 352, and cases there cited.

Although the Texas Supreme Court affirmed the *Superior Oil Co.* opinion, and that opinion has been cited by many other courts, the Court later said the power did not have to be coupled with an interest. *Pan American Petroleum Corp. v. Cain*, 163 Tex. 323, 355 S.W.2d 506 (1962). In *Pan American*, the grantor conveyed an interest in the mineral estate and reserved the executive rights as to that conveyed interest. The Court said the grantor had no interest in the mineral estate conveyed but the reservation of the executive rights thereto was proper. However, the *grantor still retained an interest in the mineral estate*, therefore he still had an interest in the property subject to the power. If we recognize that the power goes with the interest, and if we recognize that the interest can be divided and conveyed as undivided mineral interests with no executive rights, then so long as the grantor does not convey all of the mineral interest, the executive power is still coupled with *some* interest in the mineral estate. In the event all of the mineral interest is conveyed and the grantor attempts to reserve the executive rights, this is considered a "naked" power. *Id.* 355 S.W.2d at 508. The *Pan American* opinion is important because it recognizes the ambiguity in our law regarding executive rights. Further, it discusses the agency principle from which this power evolved:

(1) "An interest, not in the thing concerning which the power is to be exercised, or in the results to flow from its exercise, but merely an interest in being permitted to exercise it in order to earn his commissions." This is a

mere naked power, and is revocable at the will of the principal even though such revocation involves the breach of an agreement not to revoke it.

(2) "An interest, not amounting to a property or estate in the thing itself, but still an interest in the existence of the power or authority to act with reference to it, not for the purpose of earning a commission by the exercise of the power, but because the agent has parted with value, or incurred liability, or assumed obligations, at the principal's request or with his consent, looking to the exercise of the power as the means of reimbursement, indemnity or protection." Although this has been referred to by the courts as a power coupled with an interest and is not revocable by act of the principal, it is ordinarily deemed to be revoked by his death. For purposes of this classification, Mechem designates the same as a power given as security.

(3) "An interest or estate in the thing itself, concerning which the power is to be exercised, arising from an assignment, pledge or lien created by the principal, coupled with which is the power to deal with the thing itself in order to make the assignment, pledge or lien effectual." This is the orthodox power coupled with an interest which is generally held to be irrevocable by the act of the principal or by his death or disability.

*Id.* at 508 (quoting 1 F. Mechem, Law of Agency § 588 (2d ed. 1914)).

The Supreme Court recognized that the *Pan American* situation fell in the second category, and the Court said:

It is clear that James Kiser had more than a mere naked power. Although he owned no estate in the subject matter on which the executive right was to operate, the power was reserved to facilitate the leasing of his interest in the minerals. It was for the protection of security of such interest that he stipulated for the power.

On the basis of Mechem's classification, such power might be regarded as one given by way of security but it is not coupled with an interest.

*Id.* While that Court found the power was not coupled with an interest in that portion of the mineral estate conveyed, I still prefer to believe that the power, to be irrevocable, must be coupled with some interest in the mineral estate. For a good discussion of the executive right, *see* H. Williams & C. Meyers, Oil & Gas Law § 348 (1959). The executive right is described therein as power inherent in mineral fee ownership. They further describe the executive right as appurtenant to the mineral estate. Our sister state of Louisiana has enacted a mineral code, and it states: "The executive right is a mineral right. It may exist independently or as a part of another form of mineral right, such as a mineral servitude." La.Rev.Stat.Ann. § 31:106 (West 1975).

This majority opinion does what no other Texas court has done; it has provided appellants with an irrevocable executive right over a mineral estate in which they have no interest. This has never before been done in the history of oil and gas law. The only case that can be found in which the grantor conveyed all of the interest in the mineral estate and reserved an executive right is *Dallapi v. Campbell,* 45 Cal.App.2d 541, 114 P.2d 646 (1941). In this case the California court held that the reservation of the executive rights to a mineral estate over which the grantor had no ownership interest was void under the rule against perpetuities. This California case was discussed in *O'Daniel v. Roth,* 320 S.W.2d 51 (Tex.Civ.App.—El Paso 1958, no writ). However, it is distinguishable in that the O'Daniel conveyor retained a share of the mineral interest, and the power of the executive right was therefore valid.

Appellants have no interest whatsoever in the mineral estate except an interest in the proceeds derived therefrom. Texas courts have held that if the executive power is to be irrevocable there must be a beneficial interest in the thing itself, apart *from the proceeds derived therefrom, to*

the extent that a revocation of the power would be depriving the holder thereof of a substantial right. *Allison v. Smith,* 278 S.W.2d 940 (Tex.Civ.App.—Eastland 1955, writ ref'd n.r.e.).

It would appear that the executive power reserved by appellants was a mere "naked power" as described in Mechem's example number one, and such a power is revocable at the will of the principal.

I would hold first that an irrevocable executive right over a mineral estate must be coupled with some interest in that mineral estate. Second, I would hold that appellants created a revocable executive right; I would further hold that appellees, by execution of the oil and gas leases, revoked appellants' executive rights. Third, I would hold that appellants conveyed to appellees the right to lease and an interest in the mineral estate. This is a power coupled with an interest and is irrevocable notwithstanding appellants' attempt to require their joinder in the lease. *Allison v. Smith,* 278 S.W.2d at 945; *Odstrcil v. McGlaun,* 230 S.W.2d 353 (Tex.Civ.App.—Eastland 1950, no writ).

The judgment of the trial court should be affirmed.